**EXHIBIT A**

6-20-16  2:50pm

**SUM-100**

## SUMMONS
### (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

ENDORSED
FILED
ALAMEDA COUNTY

MAY 2 5 2016

CLERK OF THE SUPERIOR COURT
By: D. OLIVER, Deputy

**NOTICE TO DEFENDANT:** Hanlees Fremont, Inc., a California Corporation, dba
**(AVISO AL DEMANDADO):** Hanlees Fremont Hyundai; Ally Financial, Inc., a
Delaware Corporation; and Does 1 through 75, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:** Weerachai Chaiwong, an individual;
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| The name and address of the court is: (El nombre y dirección de la corte es): | CASE NUMBER (Número del Caso): 1 1 6 8 1 7 1 8 4 |
|---|---|

Alameda County Superior Court, Hayward Hall of Justice
24405 Amador Street
Hayward, CA 94544

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):

Sharon E. Glassey
GLASSEY | SMITH 9685 Via Excelencia, Suite 108, San Diego, CA 92126     (858) 207-6127

| DATE: (Fecha) | MAY 2 5 2016 | Chad Finke | Clerk, by (Secretario) | D. OLIVER | , Deputy (Adjunto) |
|---|---|---|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☑ on behalf of (specify): Ally financial Inc., a Delaware Corporation

    under: ☑ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
           ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
           ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
           ☐ other (specify):

4. ☐ by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov
WestLaw Doc & Form Builder™

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Sharon E. Glassey    SBN: 226481 | ENDORSED FILED |
| GLASSEY \| SMITH | ALAMEDA COUNTY |
| 9685 Via Excelencia, Suite 108, San Diego, CA 92126 | MAY 25 2016 |
| TELEPHONE NO.: (858) 207-6127    FAX NO.: (858) 263-0218 | CLERK OF THE SUPERIOR COURT |
| ATTORNEY FOR (Name): Plaintiff, Weerachai Chaiwong | By: D. OLIVER, Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
STREET ADDRESS: 24405 Amador Street
MAILING ADDRESS: 24405 Amador Street
CITY AND ZIP CODE: Hayward, CA 94544
BRANCH NAME: Hayward Hall of Justice

CASE NAME: Chaiwong, Weerachai v. Hanlees Fremont, Inc., dba Hanlees Fremont Hyundai, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: HG 16 8 1 7 3 8 4 |
|---|---|---|
| [X] Unlimited   [ ] Limited | [ ] Counter   [ ] Joinder | JUDGE: |
| (Amount demanded exceeds $25,000)   (Amount demanded is $25,000 or less) | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | DEPT: |

Items 1–6 below must be completed (see instructions on page 2).

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| [ ] Auto (22) | [X] Breach of contract/warranty (06) | [ ] Antitrust/Trade regulation (03) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | [ ] Other collections (09) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Insurance coverage (18) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | [ ] Other contract (37) | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | **Real Property** | [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| [ ] Other PI/PD/WD (23) | [ ] Eminent domain/Inverse condemnation (14) | |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | **Enforcement of Judgment** |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | [ ] Enforcement of judgment (20) |
| [ ] Civil rights (08) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| [ ] Defamation (13) | [ ] Commercial (31) | [ ] RICO (27) |
| [ ] Fraud (16) | [ ] Residential (32) | [X] Other complaint (not specified above) (42) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | **Miscellaneous Civil Petition** |
| [ ] Professional negligence (25) | **Judicial Review** | [ ] Partnership and corporate governance (21) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Other petition (not specified above) (43) |
| **Employment** | [ ] Petition re: arbitration award (11) | |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [X] is  [ ] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [X] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [X] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [X] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [X] punitive
4. Number of causes of action (specify): Five
5. This case [X] is  [ ] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: May 23, 2016

Sharon E. Glassey
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov
Westlaw Doc & Form Builder

**VIA FAX**

1    Glassey | Smith
     Sharon E. Glassey, SBN: 226481
2    Christopher T. Smith, SBN: 281599
     Joshua C. Anaya, SBN: 265444
3    Kayleigh M. Kagan, SBN: 306566
     9685 Via Excelencia, Suite 108
4    San Diego, CA 92126
     TEL: (858) 207-6127
5    FAX: (858) 263-0218
     sharon@californiaconsumerattorneys.com
6    chris@californiaconsumerattorneys.com
     josh@californiaconsumerattorneys.com
7    kayleigh@californiaconsumerattorneys.com

8    Attorneys for Plaintiff

**ENDORSED**
**FILED**
ALAMEDA COUNTY

MAY 2 5 2016

CLERK OF THE SUPERIOR COURT
By: D. OLiVER, Deputy

**VIA FAX**

10              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                  IN AND FOR THE COUNTY OF ALAMEDA

12                    HAYWARD HALL OF JUSTICE

14   Weerachai Chaiwong, an individual;

15              Plaintiff,

16          v.

17   Hanlees Fremont, Inc., a California
     Corporation, dba Hanlees Fremont Hyundai;
18   Ally Financial Inc., a Delaware Corporation;
     and
19   Does 1 through 75, inclusive,

20              Defendants.

Case No.   HG 16817 84

Plaintiff's Affidavit of Venue Pursuant to
California Civil Code Section 1780(d)

Plaintiff's Affidavit of Venue Pursuant to California Civil Code Section 1780(d)

I, Weerachai Chaiwong, declare as follows:

1.  I am the Plaintiff in this action and make this declaration to the best of my knowledge, information and belief of the facts stated herein.

2.  I leased the 2013 Hyundai Santa Fe that is the subject of this litigation from Hanlees Fremont Hyundai, in the City of Fremont, County of Alameda, State of California.

3.  I traded-in the 2010 Chevrolet Equinox that is the subject of this litigation to Hanlees Fremont Hyundai, in the City of Fremont, County of Alameda, State of California.

4.  I signed all paperwork for the lease of the Hyundai and trade-in of the Chevrolet at Hanlees Fremont Hyundai, in Fremont, CA.

Accordingly, these causes of action have been properly commenced in the proper county or judicial district for trial.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was signed on the 8th day of April, 2016, at Berkeley, California.
(City)

_____
Weerachai Chaiwong

1   Glassey | Smith
    Sharon E. Glassey, SBN: 226481
2   Christopher T. Smith, SBN: 281599
    Joshua C. Anaya, SBN: 265444
3   Kayleigh M. Kagan, SBN: 306566
    9685 Via Excelencia, Suite 108
4   San Diego, CA 92126
    TEL: (858) 207-6127
5   FAX: (858) 263-0218
    sharon@californiaconsumerattorneys.com
6   chris@californiaconsumerattorneys.com
    josh@californiaconsumerattorneys.com
7   kayleigh@californiaconsumerattorneys.com

8   Attorneys for Plaintiff

                                            *ENDORSED*
                                               FILED
                                         ALAMEDA COUNTY

                                            MAY 2 5 2016

                                         CLERK OF THE SUPERIOR COURT
                                         By: D _____ Deputy

                                         **VIA FAX**

9

10          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

11              IN AND FOR THE COUNTY OF ALAMEDA

12                  HAYWARD HALL OF JUSTICE

13

14   Weerachai Chaiwong, an individual;          Case No.   HG16817134

15          Plaintiff,                           Individual and Class Action Complaint

16      v.                                       1.   Violation of the Consumers Legal
                                                      Remedies Act as to Hanlees Fremont, Inc.
17   Hanlees Fremont, Inc., a California              - Injunctive Relief and Damages
     Corporation, dba Hanlees Fremont Hyundai;
18   Ally Financial, Inc., a Delaware Corporation;  2.   Violation of Business & Professions Code
     and                                              Section 17200 as to Hanlees Fremont,
19   Does 1 through 75, inclusive,                    Inc.

20          Defendants.                          3.   Violation of Business & Professions Code
                                                      Section 17200 as to Ally Financial, Inc.
21
                                                 4.   Violation of the Rosenthal Fair Debt
22                                                    Collection Practices Act as to Ally
                                                      Financial, Inc.
23
                                                 5.   Declaratory Relief as to Ally Financial,
24                                                    Inc.

25

26

27

28

                            1
                        Complaint

1         1.     Plaintiff Weerachai Chaiwong, Individually and on behalf of all others similarly situated,

2  brings this action against Defendant, Hanlees Fremont, Inc. and Defendant Ally Financial, Inc.:

3                                          **Parties and Venue**

4         2.     Plaintiff, Weerachai Chaiwong, is an individual who resided in the City of Richmond,

5  County of Contra Costa, State of California, at the time the contract that is the subject of this lawsuit was

6  entered into.

7         3.     Defendant, Hanlees Fremont, Inc., a California Corporation, dba

8  Hanlees Fremont Hyundai ("Dealer") is or was a car dealership, registered to do business in the State of

9  California, and doing business in the City of Fremont, County of Alameda.

10        4.     Defendant Ally Financial, Inc. ("Ally") is a Delaware Corporation and is and was at all

11  material times a doing business in the State of California.

12        5.     Plaintiff does not know the true names and capacities, whether corporate, partnership,

13  associate, individual or otherwise, of Defendants sued herein as Does 1 through 75, inclusive, and thus names

14  them under the provisions of section 474 of the California Code of Civil Procedure. Defendants,

15  Does 1 through 75, inclusive, are in some manner responsible for the acts, occurrences and transactions set

16  forth herein, and are legally liable to Plaintiff and/or they are the alter-ego of the Defendants named herein.

17  Plaintiff will set forth the true names and capacities of the fictitiously named Defendants together with

18  appropriate charging allegations when ascertained.

19        6.     All acts of Defendant Dealer's employees as hereinafter alleged were authorized or ratified

20  by the owner or managing agent(s) of Dealer.

21        7.     All acts of Defendant Ally's employees as hereinafter alleged were authorized or ratified by

22  the owner or managing agent(s) of Defendant Ally.

23        8.     Each Defendant, whether actually or fictitiously named here, was the principal, agent

24  (actual or ostensible), co-conspirator, or employee of each other Defendant and in acting as such principal

25  or within the course and scope of such employment, agency, or conspiracy, took some part in the acts and

26  omissions hereinafter set forth by reason of which each defendant is liable to Plaintiff for the relief prayed

27  for herein.

28

Summary of Allegations

9.    Plaintiff traded in a 2010 Chevrolet Equinox ("Chevrolet") during the lease transaction for a 2013 Hyundai Santa Fe ("Hyundai"). Dealer leased the Hyundai to Plaintiff and accepted the Chevrolet as a trade-in on September 19, 2013, at 4390 Automall Circle in Fremont, California. Plaintiff signed the Lease Agreement, attached hereto as Exhibit 1, when he leased the Hyundai.

10.    As part of the Lease Agreement transaction, Plaintiff traded in the Chevrolet, which he had previously leased through Defendant Ally. Dealer advised Plaintiff, during the lease transaction for the Hyundai, that Dealer was authorized to accept the Chevrolet as a trade-in vehicle, rather than a lease return.

11.    On September 19, 2013, Plaintiff took possession of the Hyundai, and traded in the Chevrolet to Dealer.

12.    A few months after this transaction, Plaintiff began receiving calls from Defendant Ally stating that he was delinquent on payments for the lease of the Chevrolet. Plaintiff notified Dealer immediately of the issue and requested that it fulfill its contractual obligation to pay off any remaining lease balance on the Chevrolet. Plaintiff also notified Defendant Ally that he had traded the Chevrolet in to Dealer.

13.    Dealer failed to resolve the issue with Defendant Ally regarding the Chevrolet, which has resulted in significant and ongoing damage to Plaintiff's credit. Two years have elapsed since the transaction, and Dealer has yet to resolve the balance on the Chevrolet.

14.    Defendant Ally has subsequently turned Plaintiff's account over to a debt collector, and he is currently being pursued by a collection company for $9,187.76 due on the Chevrolet. Plaintiff has suffered credit damage from the wrongdoing of Dealer.

15.    Prior to obtaining counsel, Plaintiff filed an informal complaint with the Consumer Financial Protection Bureau (CFPB). In response to Plaintiff's informal complaint, Defendant Ally provided a written response. A true and correct copy of Defendant Ally's written response, dated March 16, 2015, is attached hereto as Exhibit 2.

16.     Defendant Ally stated in Exhibit 2 that Plaintiff "could not have sold it [Chevrolet] or traded it to a dealer, unless you purchased it first." (Emphasis original.) It is on this basis that Defendant Ally is attempting to collect a debt from Plaintiff that arose out of excess wear and mileage charges on the lease of the Chevrolet. Defendant Ally asserted that because Plaintiff was prohibited from trading in the Chevrolet before purchasing it from Defendant Ally, Plaintiff is liable to Defendant Ally for excess wear and mileage charges.

17.     Defendant Ally's policies set forth in Exhibit 2 are also found in the vehicle lease contract for the Chevrolet. A true and correct copy of the vehicle lease contract for the Chevrolet is attached hereto as Exhibit 3. Section 34 of Exhibit 3 states in part: "You have an option to buy the vehicle only at scheduled lease end."

18.     California law prohibits the exact practices Defendant Ally set forth in Exhibit 2 and Exhibit 3.

19.     First, California law states that "[a] lessee has the right to terminate a lease contract at any time prior to the scheduled expiration date specified in the lease contract." (Civ. Code § 2987(a).)

20.     Second, California law states that a consumer has the right to trade in a vehicle in the connection with the lease of another vehicle. (See Civ. Code § 2987(f).) This right also limits the types of charges a lessor can assess against a consumer in this situation, specifically exempting "excess wear and mileages charges." (Civ. Code § 2987(f)(2).)

21.     Defendant Ally's violation of California consumer protection law is a violation of Business and Professions Code section 17200.

### Class Action Allegations

22.     Plaintiff brings this action on his own behalf and on behalf of all persons similarly situated against Defendant Ally only, for violations of Business and Professions Code section 17200 as set forth in Plaintiff's Third Cause of Action and Declaratory Relief in Plaintiff's Fifth Cause of Action. Such a representative action is necessary to prevent the unlawful practices alleged herein.

1    23.    This action is brought and may be properly maintained as a class action pursuant to the

2    provisions of Code of Civil Procedure section 382. Plaintiff brings this action on behalf of himself and all

3    members of the class, defined as follows:

4            All California residents who, from May 11, 2012, to the present:

5            a.    Terminated a vehicle lease contract with Defendant Ally prior to the

6                  scheduled expiration date specified in the lease contract; and

7            b.    Traded in the vehicle in connection with the purchase or lease of another

8                  vehicle; and

9            c.    Defendant Ally collected or attempted to collect a charge for excess wear

10                 and mileage.

11   Excluded from the proposed class are Defendants; any entities in which any of the Defendants has a

12   controlling interest; and the officers, directors, affiliates, attorneys, heirs, predecessors and successors in

13   interest, subsidiaries, employees, agents and/or assigns of any of the Defendants.

14   24.    The members of the class are so numerous that joinder of all members is impracticable.

15   While the exact number of class members is unknown to Plaintiff at this time and can only be ascertained

16   through discovery, Plaintiff believes that there are approximately 42,000 members in the proposed class.

17   25.    There is a well-defined community of interest among the members of the proposed class.

18   Plaintiff, like all other members of the proposed class, suffered injury from Defendant Ally's charging of

19   excess wear and mileage charges after the termination of a vehicle lease contract prior to the scheduled

20   expiration date specified in the lease contract and traded in the vehicle in connection with the purchase or

21   lease of another vehicle.

22   26.    The factual bases of Defendant Ally's misconduct are common to all members of the

23   proposed class and represent a common practice of wrongful conduct resulting in damages to all members

24   of the proposed class.

25   27.    There are numerous questions of law and fact common to Plaintiff and the members of the

26   proposed class and those questions predominate over any questions that may affect individual members of

27   the proposed class.

28

28. The common questions of fact include the following:

   a.  Whether Defendant Ally refused to allow lessees to terminate a vehicle lease contract prior to the scheduled expiration date specified in the lease contract;

   b.  Whether Defendant Ally refused to allow lessees to trade in a leased vehicle in connection with the purchase or lease of another vehicle;

   c.  Whether lessees:

      i.  Terminated a vehicle lease contract with Defendant Ally prior to the scheduled expiration date specified in the lease contract; and

      ii.  Traded in the vehicle in connection with the purchase or lease of another vehicle; and

      iii.  Defendant Ally collected or attempted to collect a charge for excess wear and mileage;

   d.  Whether Defendant Ally refused to accept vehicle lease contract payoffs from persons other the lessee;

29. The common questions of law include the following:

   a.  Whether Defendant Ally's vehicle lease contracts violate the provisions of Civil Code section 2987(a) that give a lessee the right to terminate a lease contract at any time prior to the scheduled expiration date specified in the lease contract;

   b.  Whether Defendant Ally violated Civil Code section 2987(f)(2) by assessing excess wear and mileage charges after a lessee terminated a vehicle lease contract prior to the scheduled expiration date specified in the lease contract and traded in the vehicle in connection with the purchase or lease of another vehicle; and

   c.  Whether Defendant Ally violated Rosenthal Fair Debt Collections Practices Act when it collected or attempted to collect excess wear and mileage charges after a lessee terminated a vehicle lease contract prior to the

1    scheduled expiration date specified in the lease contract and traded in the

2    vehicle in connection with the purchase or lease of another vehicle.

3        30.    Plaintiff's claims are typical of the claims of the other members of the class. Plaintiff and all

4    the members of the class have sustained economic damage arising out of the common course of conduct as

5    alleged herein.

6        31.    Plaintiff will fairly and adequately represent and protect the interests of the class. He has

7    retained counsel with substantial experience in prosecuting consumer class actions. Plaintiff and his counsel

8    are committed to vigorously prosecuting this action on behalf of the class and have the financial resources

9    necessary to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the class.

10       32.    A class action is superior to other available methods for the fair and efficient adjudication

11   of this controversy since individual joinder of all members of the class is impracticable. Further, as the

12   damages suffered by each individual member of the class may be relatively small, the expense and burden of

13   individual litigation would make it difficult or impossible for individual members of the class to redress the

14   wrongs done to them. The cost to the court system of such individual adjudication would be substantial.

15   Individualized litigation would also present the potential for inconsistent or contradictory judgments and

16   would magnify the delay and expense to all parties and the court system in multiple trials of identical factual

17   issues. By contrast, the conduct of this action as a class action presents fewer management difficulties,

18   conserves the resources of the parties and the court system and protects the rights of each class member.

19                                First Cause of Action

20              Violation of the Consumers Legal Remedies Act

21                   Civil Code Section 1750, *et seq.*

22                  As to Hanlees Fremont, Inc.

23       33.    Plaintiff incorporates herein each and every allegation set forth in the preceding and

24   following paragraphs of this Complaint, as though fully set forth herein.

25       34.    The Hyundai is a good leased for use primarily for personal, family or household purposes,

26   as Civil Code section 1761(a) defines the term "good."

27       35.    The Chevrolet is a good leased for use primarily for personal, family or household purposes,

28   as Civil Code section 1761(a) defines the term "good."

36.   Dealer is a person, as Civil Code section 1761(c) defines the term "person."

37.   Plaintiff is a consumer, as Civil Code section 1761(d) defines the term "consumer."

38.   Dealer's advertisement of the Hyundai to Plaintiff is a transaction, as Civil Code section 1761(e) defines the term "transaction."

39.   Dealer's lease of the Hyundai to Plaintiff is a transaction, as Civil Code section 1761(e) defines the term "transaction."

40.   The Consumers Legal Remedies Act (CLRA) prohibits the following unfair methods of competition and unfair or deceptive acts: (3) Misrepresenting the affiliation, connection, or association with, or certification by, another; (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have; (14) Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law.

41.   Dealer violated the CLRA by: (1) Misrepresenting to Plaintiff that Dealer would accept the Chevrolet as a trade-in vehicle; (2) Misrepresenting to Plaintiff that Dealer would pay off the balance on the Chevrolet; and (3) Failing to pay the balance owed on the Chevrolet.

42.   To satisfy the requirements of Civil Code section 1782(a), Plaintiff sent a letter to Dealer to notify it of the particular alleged violations of Civil Code section 1770. Plaintiff mailed the letter on October 6, 2015, via Certified Mail, Return Receipt Requested, to the place where the transaction occurred.

43.   The letter provided Dealer with thirty days to remedy or correct Dealer's illegal conduct.

44.   Dealer failed to provide or agree to provide a correction to remedy its illegal conduct within thirty days of receipt of the letter, the statutory period set forth by Civil Code section 1782(b).

45.   Based upon Dealer's failure to correct the illegal conduct, Plaintiff seeks all available damages, including but not limited to actual damages, punitive damages, and pre-judgment interest, for the dealership's violations of the CLRA as set forth above.

46.   Civil Code section 1780(a)(2) of the CLRA provides that a consumer is entitled to an injunction prohibiting practices which violation the CLRA. Plaintiff seeks an order enjoining Dealer from the acts, methods, and practices set forth above in this Complaint.

47.     Pursuant to Civil Code section 1780(d), Plaintiff may also recover reasonable attorney's fees and costs according to proof at time of trial.

48.     Plaintiff does not seek any recovery from Defendant Ally under this First Cause of Action.

## Second Cause of Action

## Violation of the Unfair Competition Law

## Business and Professions Code Section 17200, *et seq.*

## As to Hanlees Fremont, Inc.

49.     Plaintiff incorporates herein each and every allegation set forth in the preceding and following paragraphs of this Complaint, as though fully set forth herein.

50.     Plaintiff brings this cause of action both in his individual capacity and on behalf of the general public.

51.     Beginning at an exact date unknown to Plaintiff, but at least since September 19, 2013, Dealer committed the following acts of unfair competition, as defined by Business and Professions Code section 17200, *et seq.*: (1) Misrepresenting to Plaintiff that Dealer would accept the Chevrolet as a trade-in vehicle; (2) Misrepresenting to Plaintiff that Dealer would pay off the balance on the Chevrolet; and (3) Failing to pay the balance owed on the Chevrolet.

52.     The Unfair Competition Law ("UCL") "establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent. In other words, a practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa.'" (*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, (1999) 20 Cal. 4th 163, 180.)

53.     The above acts violate the UCL's "unlawful" prong because they violate the CLRA.

54.     Separately and independently, the above acts violate the UCL's "unfair" prong.

55.     The above acts are unfair business acts within the meaning of Business and Professions Code section 17200.

56.     The harm to Plaintiff and the public outweigh the utility of Dealer's policies and practices, particularly considering the available alternatives. Dealer's policies and practices are immoral, unscrupulous, oppressive, and unethical.

57.     The actions of Dealer cause substantial injury to consumers, and present a continuing threat to the public. Based upon the information provided to Plaintiff, Dealer has a pattern and practice of violating the CLRA in the leases of vehicles to the public. Dealer continues to mislead and prey upon the public.

58.     Plaintiff has suffered injury in fact as a result of Dealer's illegal conduct. Business and Professions Code section 17203 provides that Plaintiff is entitled to an order enjoining Dealer from engaging in acts or practices that violate Business and Professions Code section 17200, as well as providing for equitable monetary relief so as to preclude the retention of all ill-gotten monies by Dealer or so as to restore any monies wrongfully obtained by Dealer to Plaintiff. Plaintiff seeks such equitable monetary relief, and an order enjoining Dealer from engaging in the acts and practices set forth in this Complaint.

Third Cause of Action

Violation of the Unfair Competition Law

Business and Professions Code Section 17200, *et seq.*

As to Defendant Ally, Inc. Only

59.     Plaintiff incorporates herein each and every allegation set forth in the preceding and following paragraphs of this Complaint, as though fully set forth herein.

60.     Plaintiff brings this cause of action both in his individual capacity and on behalf of the general public.

61.     Beginning at an exact date unknown to Plaintiff, but at least since September 19, 2013, Ally Financial committed the following acts of unfair competition, as defined by Business and Professions Code section 17200, *et seq.*: (1) Treating a lessee's trade in of a leased vehicle as a lease return, (2) Charging lessees for a lease return; (3) Attempting to collect charges based upon a lease return of a traded in vehicle; (4) Turning a lessee's account over to collections based upon charges for a lease return; (5) Using vehicle lease contracts that violate the provisions of Civil Code section 2987(a) that give a lessee the right to terminate a lease contract at any time prior to the scheduled expiration date specified in the lease contract; (6) Violating Civil Code section 2987(f)(2) by assessing excess wear and mileage charges after a lessee terminated a vehicle lease contract with Defendant Ally prior to the scheduled expiration date specified in the lease contract and traded in the vehicle in connection with the purchase or lease of another vehicle;

10
Complaint

1  and (6) Violating the Rosenthal Fair Debt Collections Practices Act when it attempted to collect, is

2  attempting to collect, or collected from California residents excess wear and mileage charges after

3  termination of a vehicle lease contract with Defendant Ally prior to the scheduled expiration date specified

4  in the lease contract and the trade in of the vehicle in connection with the purchase or lease of another

5  vehicle.

6        62.    The Unfair Competition Law ("UCL") "establishes three varieties of unfair

7  competition—acts or practices which are unlawful, or unfair, or fraudulent. In other words, a practice is

8  prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa.'" (*Cel-Tech Commc'ns, Inc. v.*

9  *Los Angeles Cellular Tel. Co.*, (1999) 20 Cal. 4th 163, 180.)

10        63.    The above acts violate the UCL's "unlawful" prong because they violated the

11  Vehicle Leasing Act and the FDCPA.

12        64.    Separately and independently, the above acts violate the UCL's "unfair" prong.

13        65.    The above acts are unfair business acts within the meaning of Business and Professions Code

14  section 17200.

15        66.    The harm to Plaintiff and the public outweigh the utility of Defendant Ally's policies and

16  practices, particularly considering the available alternatives. Defendant Ally's policies and practices are

17  immoral, unscrupulous, oppressive, and unethical.

18        67.    The actions of Defendant Ally cause substantial injury to consumers, and present a

19  continuing threat to the public. Based upon the information provided to Plaintiff, Defendant Ally has a

20  pattern and practice of: treating a trade in of a lease vehicle as a lease return to charge fees to consumers.

21  Defendant Ally continues to mislead and prey upon the public.

22        68.    Plaintiff has suffered injury in fact as a result of Defendant Ally's illegal conduct. Business

23  and Professions Code section 17203 provides that Plaintiff is entitled to an order enjoining Defendant Ally

24  from engaging in acts or practices that violate Business and Professions Code section 17200, as well as

25  providing for equitable monetary relief so as to preclude the retention of all ill-gotten monies by Defendant

26  Ally or so as to restore any monies wrongfully obtained by Defendant Ally to Plaintiff. Plaintiff seeks such

27  equitable monetary relief, and an order enjoining Defendant Ally from engaging in the acts and practices

28  set forth in this Complaint.

69.      Plaintiff does not seek any recovery from Dealer under this Third Cause of Action.

Fourth Cause of Action

Violation of the Rosenthal Fair Debt Collections Practices Act

Civil Code Section 1788, et seq.

70.      Plaintiff incorporates herein each and every allegation set forth in the preceding and following paragraphs of this Complaint, as though fully set forth herein.

71.      Plaintiff is a person, as Civil Code section 1788.2(g) defines the term "person."

72.      Plaintiff is a debtor, as Civil Code section 1788.2(h) defines the term "debtor."

73.      Plaintiff entered into a consumer credit transaction with Defendant Ally, as Civil Code section 1788.2(e) defines the term "consumer credit transaction.".

74.      Plaintiff obtained a consumer debt from Defendant Ally, as Civil Code section 1788.2(f) defines the term "consumer debt."

75.      Defendant Ally is a person, as Civil Code section 1788.2(g) defines the term "person."

76.      Defendant Ally is a creditor, as Civil Code section 1788.2(I) defines the term "creditor."

77.      Defendant Ally provided consumer credit to Plaintiff, as Civil Code section 1788.2(f) defines the term "consumer credit."

78.      Defendant Ally is a debt collector, as Civil Code section 1788.2(c) defines the term "debt collector."

79.      As a debt collector, Defendant Ally engaged in debt collection activities with regards to Plaintiff's consumer debt, as Civil Code section 1788.2(b) defines the term "debt collection."

80.      As a debt collector, Defendant Ally violated the provisions of Civil Code section 1788.30(a). In attempting to collect Plaintiff's consumer debt, Ally violated the following provisions of Civil Code section 1788.10: (1) Treating Plaintiff's trade in of the Chevrolet as a lease return, thereby creating an obligation which Plaintiff did not owe; (2) Charging Plaintiff for a lease return of the Chevrolet, thereby creating an obligation which Plaintiff did not owe; (3) Attempting to collect charges based upon a lease return of the Chevrolet, thereby creating an obligation which Plaintiff did not owe; and (4) Turning Plaintiff's account over to collections for $9,187.76 due on the Chevrolet based upon a lease return, thereby creating an obligation which Plaintiff did not owe.

81.     Based upon Defendant Ally's violation of Civil Code section 1788.30(a), Defendant Ally is liable to Plaintiff for Plaintiff's actual damages.   This includes damage to Plaintiff's credit for Defendant Ally's attempts to collect an obligation Plaintiff does not owe.

82.     As a debt collector, Defendant Ally's violations of the Rosenthal Act were willful and knowing. Based upon Plaintiff's notice to Defendant Ally that he traded in the Chevrolet and did not perform a lease return, Defendant Ally knew what it was doing, intended to do what it was doing, and acted as a free agent.

83.     Based upon Defendant Ally's willful and knowing violations of the Rosenthal Act, pursuant to Civil Code section 1788.30, Defendant Ally is liable to Plaintiff for a penalty.

84.     Pursuant to Civil Code section 1788.30(c), Plaintiff seeks his reasonable attorney's fees and costs incurred as to Defendant Ally for the violations of the Rosenthal Act set forth in this Fourth Cause of Action.

85.     Plaintiff does not seek any recovery from Dealer under this Fourth Cause of Action.

Fifth Cause of Action

Declaratory Relief

Code of Civil Procedure Section 1060

As to Defendant Ally Only

86.     Plaintiff incorporates herein each and every allegation set forth in the preceding and following paragraphs of this Complaint, as though fully set forth herein.

87.     As discussed above, Plaintiff and Defendant Ally entered into a contract for the lease of the Chevrolet.

88.     An actual controversy exists involving justiciable questions relating to Plaintiff's rights and obligations under the contract for the lease of the Chevrolet. Specifically, Plaintiff traded in the Chevrolet to Hanlees and did not perform a lease return. Because Plaintiff did not perform a lease return, Defendant Ally cannot charge Plaintiff any fees, charges, or expenses associated with a lease return.

89.     Despite Plaintiff's assertion that he traded in the Chevrolet, Defendant Ally attempted to and continues to attempt to collect a debt and obligation that arose out of a lease return of the Chevrolet.

90. Through this Complaint and pursuant to Code of Civil Procedure section 1060, Plaintiff desires and seeks a declaration of his rights with respect to the contract for the lease of the Chevrolet.

91. Specifically, Plaintiff seeks a declaration of each of the following:

a. That Plaintiff had the right to terminate the lease at any time prior to the scheduled expiration date specified in the lease contract;

b. That Plaintiff traded in the Chevrolet to Hanlees;

c. That Plaintiff had the right to trade in the Chevrolet to Hanlees;

d. That Ally was obligated to accept a lease payoff from Hanlees;

e. That Plaintiff did not perform a lease return of the Chevrolet to Defendant Ally;

f. That Plaintiff is not liable for any fees, charges, or expenses associated with a lease return of the Chevrolet; and

g. That Plaintiff does not owe Defendant Ally or its assignees $9,187.76 related to the Chevrolet.

92. Plaintiff does not seek any recovery from Dealer under this Fifth Cause of Action.

## Prayer for Relief

Accordingly, Plaintiff prays for judgment as follows and as permitted as to each cause of action:

1. For certification of this action as a plaintiff class action as set forth hereinabove as to Defendant Ally only;

2. For an award of compensatory damages in an amount according to proof at trial;

3. For general and actual damages according to proof at trial;

4. For rescission of the Lease Agreement for the Hyundai and restitution of all monies expended;

5. For incidental and consequential damages according to proof at trial;

6. For punitive damages as to Dealer, only;

7. For statutory damages;

8. For equitable and injunctive relief;

9. As to Defendant Ally, for a declaration that Plaintiff traded in the Chevrolet to Hanlees;

10. As to Defendant Ally, for a declaration of the following:

    a. That Plaintiff had the right to terminate the lease at any time prior to the scheduled expiration date specified in the lease contract;

    b. That Plaintiff traded in the Chevrolet to Hanlees;

    c. That Plaintiff had the right to trade in the Chevrolet to Hanlees;

    d. That Ally was obligated to accept a lease payoff from Hanlees;

    e. That Plaintiff did not perform a lease return of the Chevrolet to Defendant Ally;

    f. That Plaintiff is not liable for any fees, charges, or expenses associated with a lease return of the Chevrolet; and

    g. That Plaintiff does not owe Defendant Ally or its assignees $9,187.76 related to the Chevrolet.

11. For pre-judgment interest at the legal rate;

12. For reasonable attorney's fees and costs of suit; and

13. For such other and further relief as the Court deems just and proper under the circumstances.

May 23, 2016

Glassey | Smith

By: _____

Sharon E. Glassey
Attorneys for Plaintiff

# EXHIBIT 1

## LE.    GREEMENT

Lease Date: _____

☐ Business, Commercial, or Agricultural Purpose Lease.

| Lessor Name and Business Address | Lessee(s) Name(s) and Residence Address(es) |
|---|---|

County: _____

**1. Parties and Agreement to Lease.** In this Lease, "you" and "your" mean the lessee, "We," "us" and "our" mean the original lessor and the party to whom the original lessor intends to assign the Lease. These terms, conditions and disclosures govern your Lease with us and after assignment, with the party to whom we have assigned the Lease (the "Assignee"). Disclosures in this Lease are made on behalf of the lessor, and after assignment, on behalf of the Assignee shown below. Each of you who signs the Lease is individually liable to us for all Lease obligations. You are leasing the Vehicle described below (the "Vehicle") from us. You agree to pay all amounts due under the Lease and fulfill all your obligations under the Lease. You intend to use the Vehicle primarily for personal, family or household purposes unless the "Business, Commercial or Agricultural Purpose Lease" box above is checked. In this Lease, "e" means an estimate. The Consumer Leasing Act Disclosures shown below are also terms of this Lease.

### 2. Description of the Leased Property (The "Vehicle")

| New/Used | Year | Make | Model | Body Style | Vehicle ID # | License No. | Odometer |
|---|---|---|---|---|---|---|---|
| NE | | | | | | | |

### 3. CONSUMER LEASING ACT DISCLOSURES

| Amount Due at Lease Signing or Delivery* (itemized below)* | Monthly Payments | Other Charges (not part of your monthly payment) | Total of Payments (The amount you will have paid by the end of the Lease) |
|---|---|---|---|
| $ _____ | Your first monthly payment of $ _____ is due on _____, followed by _____ payments of $ _____ due on the _____ of each month. The total of your monthly payments is $ _____ | Disposition fee (if you do not purchase the Vehicle) $ _____  $ _____  $ _____  Total $ _____ | $ _____ |

#### *Itemization of Amount Due at Lease Signing or Delivery

| Amount Due at Lease Signing or Delivery: | | How the Amount Due at Lease Signing or Delivery will be paid: | |
|---|---|---|---|
| Capitalized cost reduction | $ _____ | | |
| First monthly payment | $ _____ | Net trade-in allowance | $ _____ |
| Refundable security deposit | $ _____ | | |
| Title fees | $ _____ | Rebates and noncash credits | $ _____ |
| Registration fees | $ _____ | | |
| California tire fees | $ _____ | Amount to be paid in cash | $ _____ |
| Electronic vehicle registration or transfer charge (not a governmental fee) | $ _____ | | |
| Lease acquisition fee | $ N/A | | Total $ 2500.00 |
| Document processing charge (Not a governmental fee) | $ 85.00 | | |
| _____ TAXES | $ _____ | | |
| N/A | $ N/A | | |
| SMOG ABATEMENT | $ _____ | | |
| | $ _____ | | |
| | Total $ _____ | | |

#### Your monthly payment is determined as shown below:

| | |
|---|---|
| **Gross capitalized cost.** The agreed upon value of the Vehicle ($ _____ ) and any items you pay over the Lease term (such as service contracts, insurance, and any outstanding prior credit or lease balance). | $ _____ |
| **Capitalized cost reduction.** The amount of any net trade-in allowance, rebate, noncash credit, or cash you pay that reduces the gross capitalized cost. | − $ 1423.71 |
| **Adjusted capitalized cost.** The amount used in calculating your base monthly payment. | = $ 34591.48 |
| **Residual value.** The value of the Vehicle at the end of the Lease used in calculating your base monthly payment. | − $ 19991.85 |
| **Depreciation and any amortized amounts.** The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease term. | = $ _____ |
| **Rent charge.** The amount charged in addition to the depreciation and any amortized amounts. | + $ 2196.55 |
| **Total of base monthly payments.** The depreciation and any amortized amounts plus the rent charge. | = $ 10356.30 |
| **Lease payments.** The number of payments in your Lease (This is also the number of months in your Lease). | ÷ 36 |
| **Base monthly payment.** | = $ 168.51 |
| **Monthly sales/use tax.** | + $ 42.15 |
| | + $ N/A |
| | + $ N/A |
| **Total monthly payment.** | = $ 210.66 |

**Early Termination.** You may have to pay a substantial charge if you end this lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the lease is terminated. The earlier you end the lease, the greater this charge is likely to be.

**Excessive Wear and Use.** You may be charged for excessive wear based on our standards for normal use and for mileage in excess of _____ miles per year at the rate of _____ ¢ per mile.

**Purchase Option at End of Lease Term.** You have an option to purchase the Vehicle at the end of the Lease term for $ 19991.85 and a purchase option fee of $ _____ . The purchase option price does not include official fees such as those for taxes, tags, licenses and registration.

**Other Important Terms.** See your lease documents for additional information on early termination, purchase options, maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

### 4. Itemization of Gross Capitalized Cost

| Agreed upon value of the Vehicle as equipped at the time lessee and lessor sign this Lease: | $ _____ | Prior credit or lease balance on trade-in vehicle being capitalized | $ N/A |
|---|---|---|---|
| Accessories and optional equipment Lessor agrees to add to the Vehicle after Lease signing: | | **Optional Products and Services:** | |
| (Describe) _____ | $ N/A | Mechanical Breakdown Protection | $ N/A |
| (Describe) N/A | $ N/A | Amount for Service Contract | $ N/A |
| (Describe) _____ | $ N/A | Gap Contract or Coverage or Gap Waiver | $ 750.00 |
| (Describe) N/A | $ N/A | Amount of Premium for Insurance Policy | $ N/A |
| Total agreed upon value of Vehicle: | $ 33420.00 | Amount of Premium for Insurance Policy | $ N/A |
| Other amounts included in the gross capitalized cost: | | Electronic vehicle registration or transfer charge (not a governmental fee) | $ N/A |
| Taxes | $ N/A | N/A | $ _____ |
| Title and registration fees | $ N/A | _____ CARE | $ _____ |
| California tire fees | $ N/A | EXCESS CARE | $ _____ |

## 4. Itemization of Gross Capitalized Cost

Agreed upon value of the Vehicle as equipped
at the time lessee and lessor sign this Lease;   $ _____
Accessories and optional equipment Lessor agreed to add to the Vehicle after Lease signing:

(Describe) _____   $ _____
(Describe) _____   $ _____
(Describe) _____   $ _____
(Describe) _____   $ _____
Total agreed upon value of Vehicle:   $ _____
Other amounts included in the gross capitalized cost:

Taxes   $ _____
Title and registration fees   $ _____
California tire fees   $ _____
Lease acquisition fee   $ _____
Document processing charge (Not a governmental fee) $ _____
_____   $ _____

Prior credit or lease balance on trade-in vehicle
being capitalized   $ _____  $
Optional Products and Services:

Mechanical Breakdown Protection   $ _____
Amount for Service Contract   $ _____
Gap Contract or Coverage or Gap Waiver   $ _____
Amount of Premium for Insurance Policy   $ _____
Amount of Premium for Insurance Policy   $ _____
Electronic vehicle registration or transfer charge
(not a governmental fee)

_____   $ _____
_____   $ _____
_____   $ _____
_____   $ _____
_____   $ _____

**Total Gross Capitalized Cost:**   $ _____
‡ No add permitted unless lessor has paid prior credit or lease balance.

## 5. **Description of the Trade-in Vehicle**

Year _____

Make _____   Model _____

Gross Agreed-Upon Value of Trade-in   $ _____
Prior Credit or Lease Balance on Trade-in   – $ _____
Net Trade-in Allowance (if less than 0 then enter 0)   = $ _____

This box for use by original lessor and lessee to memorialize vehicle trade-in, turn-in, or other individualized agreements. If none, enter "none" or "N/A". Assignee shall not be obligated for agreements disclosed here.

6. **Estimated Official Fees and Taxes.** The total estimated amount you will pay for officials and license fees, registration, title and taxes over the term of your Lease, whether included with your monthly payments or assessed otherwise.  $ _____ (e) the actual total of fees and taxes may be higher or lower depending on the tax rates in effect on the value of the Vehicle at the time a fee or tax is assessed.

7. **Warranties.** The Vehicle is subject to the following express warranties: If the Vehicle is new, the Vehicle is subject to the manufacturer's standard new car warranty. ☐ If this box is checked, the Vehicle is subject to the following express warranty or guarantee:

_____

If the Vehicle is not new, and no warranty is identified in the previous sentence, there is no express warranty on the Vehicle. TO THE EXTENT PERMITTED BY LAW, WE DISCLAIM ANY WARRANTIES IMPLIED BY LAW, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE, if no express warranty applies, THE

VEHICLE IS BEING LEASED "AS IS," AND "WITH ALL FAULTS," AND THE ENTIRE RISK AS TO THE QUALITY AND PERFORMANCE OF THE VEHICLE IS WITH YOU SHOULD THE VEHICLE PROVE DEFECTIVE FOLLOWING DELIVERY. PURSUANT TO THIS LEASE, YOU, NOT THE LESSOR, ASSUME THE ENTIRE COST OF ALL NECESSARY SERVICING OR REPAIR. If we make a written warranty covering the Vehicle or, within 30 days of the Lease Date we extend a service contract covering the Vehicle, nothing in this item 7 will affect any implied warranties during the term of the warranty or service contract.

8. **Late Payments.** The charge for late payments is _____ for any payment not received within 10 days of the date it is due.

9. **Disposition Fee** (See "Return of the Vehicle" on the other side of this Lease):
$ _____

10. **Early Termination Fee** (See "Terms Concerning Your Early Termination Liability" on the other side of this Lease): $ _____ (may not exceed Disposition Fee shown on item 9).

## 11. Optional Products and Services

You are not required to buy any of the following optional products and services to enter into the Lease. The term of any product or service will be the Lease term, unless a different term is shown below. If you decide you want to buy an optional product or service, review the terms of the contract for the product or service before you initial below. A completed copy of the contract will be given to you as soon as practicable. By initialing below, you indicate that you want to purchase the optional products and services indicated. If the cost shown below is not shown as part of the Itemization of Amount Due at Lease Signing above, it has been added to the Gross Capitalized Cost (see Itemization above).

| Optional Product or Service | Amount or Period | Price | Term | Name of Provider | Approval |
|---|---|---|---|---|---|
| Optional Mechanical Breakdown Protection or Service Contract | | | | | Lessee Initials |
| Optional Gap Contract or Coverage, or Gap Waiver | | | | | Lessee Initials |

## 12. NOTICES

NOTICE TO THE LESSEE: YOU HAVE NO OWNERSHIP RIGHTS IN THE VEHICLE UNLESS AND UNTIL YOU EXERCISE YOUR OPTION TO PURCHASE THE VEHICLE.

## 13. CALIFORNIA NOTICES

NOTICE - THERE IS NO COOLING-OFF PERIOD. California law does not provide for a "cooling-off" or other cancellation period for vehicle leases. Therefore, you cannot later cancel this lease simply because you change your mind, decided the vehicle costs too much, or wish you had acquired a different vehicle. You may cancel this lease only with the agreement of the lessor or for legal cause, such as fraud.

NOTICE - You have the right to return the vehicle, and receive a refund of any payments made if the credit application is not approved, unless nonapproval results from an incomplete application or from incorrect information provided by you.

GAP LIABILITY NOTICE - In the event of theft or damage to the vehicle that results in a total loss, there may be a GAP between the amount due upon early termination and the proceeds of your insurance settlement and deductible. THIS LEASE PROVIDES THAT YOU ARE LIABLE FOR THE GAP AMOUNT. Optional coverage for the GAP amount may be offered for an additional price.

(1) Do not sign this lease before you read it or if it contains any blank spaces to be filled in; (2) You are entitled to a completely filled in copy of this lease; (3) Warning-Unless a charge is included in this lease for public liability or property damage insurance, payment for that coverage is not provided by this lease.

BY SIGNING THE LEASE, YOU ACKNOWLEDGE THAT YOU HAVE RECEIVED AND READ A COMPLETED COPY OF THIS LEASE BEFORE SIGNING IT.

### LESSEE SIGNATURES
(check if other than individual(s)  ☐ Corporation ☐ Partnership ☐ LLC or LLP ☐ Sole Proprietorship

Lessee Signature _____   Lessee Signature _____

Type/Print Lessee Name _____   Type/Print Lessee Name _____

### LESSOR'S ACCEPTANCE AND ASSIGNMENT
The Lessor's authorized signature indicates the Lessor has accepted the terms, conditions and obligations of the Lease and that the Lessor agrees to the "Lessor's Assignment" provision on the other side of this Lease.

Lessor Name: _____   By: _____

Type/Print Name: _____

Assignee Name: _____   Type/Print Title: _____

LAW FORM NO. LAW-100-CA rev. 4/18

# EXHIBIT 2



P.O. Box 5181
Southfield, MI 48086-5181

March 16, 2015

Weerachai Chaiwong
2855 Gaynor Avenue
Richmond, California 94804

Re: CFPB case number 150212-001860

Dear Weerachai Chaiwong:

The complaint you recently filed with the CFPB was referred to me for review and a response.

On June 22, 2010 you entered into a Lease Agreement (the "Lease Agreement") with Fremont Automotive Retailing Group, Inc. for the lease of a 2010 Chevrolet Equinox. The lease, which was scheduled to end on September 21, 2013, was assigned to Ally Financial ("Ally"). On September 19, 2013, you informed Ally that you returned the leased vehicle to Hanlees Fremont Hyundai and leased another vehicle (this lease was not assigned to Ally). Ally contacted Hanlees Fremont Hyundai on October 9, 2013 to proceed with the lease termination. An odometer statement prepared in connection with the return of the leased vehicle was received by Ally on October 10, 2013 and Ally arranged to recover the vehicle from the dealership.

You assert in your complaint that you should not have been billed for any additional fees or charges because you used the leased vehicle as a "trade-in" on another vehicle. Generally, at lease end, the lessee has two options, the lessee can either purchase the leased vehicle for the "Purchase Option at End of Lease Term" price set forth in the Lease Agreement, or the lessee can return the leased vehicle. If the lessee elects to return the leased vehicle, or if the dealership to which the vehicle is returned decides to purchase the leased vehicle for its inventory, the lessee will be responsible for excess mileage and wear charges, as well as other amounts like unpaid payments or late fees, as set forth in the Lease Agreement.

Further, with respect to your assertion that you used the leased vehicle as a "trade in", you did not own the leased vehicle. Therefore, you could not have sold it or traded it to a dealer, unless you purchased it first. It should also be noted that the lease agreement that you included in your complaint package for the lease of a 2013 Hyundai Santa Fe, reflects a net trade-in allowance of $0.00.

Our records indicate that you returned the leased vehicle to the dealership on September 19, 2013 and the dealership indicated they wanted to purchase the leased vehicle for its inventory. Further, our records indicate that on October 14, 2013 Ally received a check from Hanlees Fremont Hyundai for the purchase of the leased vehicle. Due to a miscommunication between Ally and the dealership, however, Ally sent a transporter to pick up the vehicle for sale at auction and a dealership employee instructed the transporter to recover the vehicle. Ally offered to return the vehicle to the dealership but the dealer advised that they no longer wanted to buy the vehicle. As requested by the dealership, Ally refunded the purchase price of the vehicle to the dealership.

On November 7, 2013, an Account Settlement letter was sent to your address of record informing you that you owe Ally $9,187.76 for excess mileage charges of $7,762.60, excess wear charges of $1,148.20, plus related sales/use tax of $801.96, less a credit of the security deposit of $525.00.

Per Section 14 of the Lease Agreement, you had a mileage allowance of 39,190 miles on the odometer at lease end. A review of your account revealed that the vehicle was returned with an odometer reading of 78,003 miles. You exceeded your total allowed miles by 38,813 miles. In accordance with the term of the Lease Agreement you were charged $0.20 per miles for each mile you exceeded the mileage allowance,

Weerachai Chaiwong
CFPB Case No. 150212-001860
Dated March 16, 2015
Page 2

(plus tax).  You appear to believe that you should not be responsible for the excess wear and mileage
charges (plus tax) due to the fact that the dealership had intended to purchase the vehicle for their
inventory.  Your assumption is incorrect.  However, as you did not purchase the leased vehicle, you
remain responsible for the excess wear and mileage charges (plus tax).  Please review Section 36(b) of
your Lease Agreement (enclosed), "**What You Owe At Scheduled End (b) If You Do Not Buy The
Vehicle**".

At this time, a balance of $9,187.76 remains due on your account.  Due to any misunderstanding
regarding this matter, we are willing to settle your account if you pay $6,890.82.  This represents a 75%
reduction of the balance owed.  If you accept this offer, Ally will update the credit bureaus to "Account
paid in full, was a charge-off/Account paid in full for less than the full balance" once all of the settlement
funds have been received by Ally.  Please contact Ally at 1-800-241-0172 to set up suitable payment
arrangement on the balance owed before April 15, 2015 or the full balance will remain due.

We appreciate the opportunity to have reviewed and responded to your concerns.  If you have additional
questions, please contact me at 972-537-2094

Sincerely,

Jane Overturf
Executive Customer Relations
Ally Financial

File #24313
Cc: Consumer Financial Protection Board

# EXHIBIT 3

## GMAC SmartLease® — Monthly Payment

| LESSEE (and CO-LESSEE ("You") name and address, including county | Garaging address (if different) | LESSOR (Retailer) |
|---|---|---|
| MEERACHAI CHAIKONG | | FREMONT CHEVROLET |
| 1444 FOURTH ST | | 5850 CUSHING PKW... |
| SAN RAFAEL, CA  94901-1266  MARIN | Principal driver (if business use) | FREMONT, CA |

This is an agreement to lease a vehicle. This is not a purchase agreement. You are not buying the vehicle. By signing this lease, you agree to everything on the front and back.
"We", "us", and "our" refer to Lessor named and any assignee. An "assignee" is a person to whom this lease is assigned (if it is assigned).

☐ If this box is checked, Lessor (Retailer) will assign this lease and sell the vehicle to GMAC.
☐ If this box is checked, GMAC helped to arrange this lease and Lessor (Retailer) will assign it and sell the vehicle to Central Originating Lease Trust.
☐ If this box is checked, Lessor (Retailer) will assign this lease and sell the vehicle to ____
☐ If this box is checked, Lessor (Retailer) intends not to assign this lease.

### THE VEHICLE YOU ARE LEASING

| New/Used | Year | Make & Model | Body Style | Vehicle ID # | Mileage | License # | Primary Use |
|---|---|---|---|---|---|---|---|
| NEU | 2010 | CHEVROLET  EQUITRONLL2 | UT | 2CNFLREYXA6374830 | 190 | | ☒☐ Personal, Family, ☐ Commercial business, or Household    or Agricultural<br>☐ Public Conveyance |

GVW (if truck) 1001

### FEDERAL CONSUMER LEASING ACT DISCLOSURES

| 1. Amount Due at Lease Signing or Delivery (Itemized Below)* | 2. Monthly Payments | 3. Other Charges (not part of your monthly payment) | 4. Total of Payments |
|---|---|---|---|
| $ ___4400.00___ | Your first monthly payment of $ ___500.00___ is due on 05/22/2010, followed by 38 payments of $ ___500.00___ due on the 22ND of each month. The total of your monthly payments is $ ___19500.00___ | Disposition fee (if you do not purchase the vehicle). $ ___N/A___  $ ___N/A___  $ ___N/A___  Total $ ___N/A___ | (The amount you will have paid by the end of the lease.)  $ _____ |

5. Amount Due at Lease Signing or Delivery:

*Itemization of Amount Due at Lease Signing or Delivery

6. How the Amount Due at Lease Signing or Delivery will be paid:

| a. Capitalized cost reduction | $ 2601.14 | a. Net trade-in allowance | $ _____ |
|---|---|---|---|
| b. First monthly payment | $ 500.00 | b. Rebates and noncash credits | $ _____ |
| c. Refundable security deposit | $ 525.00 | c. Amount to be paid in cash | $ _____ |
| d. Title fees | $ N/A | | |
| e. Registration fees | $ 518.00 | | |
| f. Sales/use tax | $ 247.11 | | |
| g. _____ | $ N/A | | |
| __ __ 75 | $ 8.75 | | |
| __ | $ N/A | | |
| j. Total | $ 4400.00 | d. Total | $ _____ |

7. Your monthly payment is determined as shown below:

a. Gross capitalized cost. The agreed upon value of the vehicle ($ 32719.65 ) and any items you pay for over the lease term (such as service contracts, insurance, and any outstanding prior credit or lease balance) ...................... $ _____

b. Capitalized cost reduction. The amount of any net trade-in allowance, rebate, noncash credit, or cash you pay that reduces the gross capitalized cost. — $ _____

c. Adjusted capitalized cost. The amount used in calculating your base monthly payment ................................. = $ _____

d. Residual value. The value of the vehicle at the end of the lease used in calculating your base monthly payment ............... — $ _____

e. Depreciation and any amortized amounts. The amount charged for the vehicle's decline in value through normal use and/or other items paid over the lease term .................................. = $ _____

f. Rent charge. The amount charged in addition to the depreciation and any amortized amounts ........................ + $ _____

g. Total of base monthly payments. The depreciation and any amortized amounts plus the rent charge ...................... = $ _____

h. Lease payments. The number of payments in your lease .................................... ÷ _____

N/A

l. Total monthly payment ............................ $ _____

$ _____

$ _____

**Early Termination. You may have to pay a substantial charge if you end this lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the lease is terminated. The earlier you end the lease, the greater this charge is likely to be.**

8. **Excessive Wear and Use.** You may be charged for excessive wear based on our standards for normal use and for mileage in excess of ___12,000___ miles per year at the rate of $ .50 per mile.

9. **Purchase Option at End of Lease Term.** You have an option to buy the vehicle at the end of the lease term for $ __17134.50__ plus official fees and taxes.

10. **Other Important Terms.** See your lease documents for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, and insurance.

| 11. ITEMIZATION OF GROSS CAPITALIZED COST. | | |
|---|---|---|
| a. Agreed upon value of the vehicle as equipped at lease signing | | $ 32219.55 |
| b. Agreed upon value of accessories or optional equipment that Lessor agrees to add to the vehicle after lease signing | | |
| (Describe) PACK FOR NEW CARS | | |
| (Describe) | + $ | N/A |
| (Describe) | + $ | N/A |
| | + $ | N/A |
| c. GMAC administrative fee | + $ | 795.00 |
| d. License/registration/title fees | + $ | N/A |
| e. Sales tax | + $ | N/A |
| f. Other tax (describe) N/A | + $ | N/A |
| g. Optional service contract (describe) N/A | + $ | N/A |
| h. Optional service contract (describe) N/A | + $ | N/A |
| i. Optional service contract (describe) | + $ | N/A |
| j. Optional life insurance | + $ | N/A |
| k. Optional disability insurance | + $ | N/A |
| l. N/A | + $ | N/A |
| m. | = $ | 33014.55 |
| n. Gross Capitalized Cost | | |

**12. THE VEHICLE YOU ARE TRADING.**

| (year) | (make) | (model) | |
|---|---|---|---|
| Gross trade-in value | | $ | N/A |
| Payoff | | – $ | N/A |
| Net trade-in value | | = $ | N/A |

**13. OFFICIAL FEES AND TAXES.** You will pay all government license, title, registration, testing, and inspection fees for the vehicle. You will pay all taxes on the lease or the vehicle that the government levies on you, the vehicle, or us (except our net income taxes). We may change your monthly payment or bill you separately for official fees and taxes.

**TOTAL ESTIMATED FEES AND TAXES YOU MUST PAY DURING LEASE** .... $ 1647.69

The actual total of fees and taxes may be higher or lower depending on tax rates in effect or the vehicle value when a fee or tax is assessed.

| | | |
|---|---|---|
| a. Title/lien fees | $ | N/A |
| b. Registration fees/taxes | $ | N/A |
| c. License fees/taxes | $ | N/A |
| d. Sales/use taxes (including tax on capitalized cost reduction) | $ | 1936.93 |
| e. Excise taxes | $ | N/A |
| f. Property taxes | $ | N/A |
| g. Other (describe) | $ | 8.75 |
| h. Other (describe) Calif Tire Fee | $ | N/A |
| i. Other (describe) | $ | N/A |

**14. MILEAGE.**

Base Mileage Allowance. ☐ 15,000 miles/year.  ☒ Low mileage: 12,000 miles/year.
☐ Medium-duty truck (gasoline): 25,000 miles/year

15. **LATE CHARGE.** If you do not pay a monthly payment in full within 30 days after it is due, you will pay a late charge of $4.

16. **CHARGE FOR FINES.** If the government places a fine on the vehicle and you do not pay it promptly, we may pay it. Each time we pay a fine, you will pay us the fine plus $20.

17. **SCHEDULED LEASE END DATE.** This lease is scheduled to end __7 / 21 / 2015__ (month) (day) (year). You are scheduled to return the vehicle on this date.

18. **LEASE END DAILY EXTENSION CHARGE.** $ 25.00 per day (plus tax), beginning on the eighth day after scheduled lease end date.

19. **REQUIRED VEHICLE INSURANCE INFORMATION.** You affirm that liability and physical damage policies that meet our requirements (see the other side) are in force on the date of this lease as follows:

Insurance company name: __STATE FARM__

Insurance agency name: _____

Agency Address: _____

Agency Phone no.: __415-459-0200__

Agent's name: __Rose Kurtz__

Policy no: __0715200-0-16-05F__    ☐ Liability    ☐ Physical damage
Deductibles: Collision $ __500 Ded.__    Comprehensive $ __500 Ded.__

Insurance company name: __N/A__

Insurance agency name: __N/A__

Agency Address: __N/A__

Agency Phone no.: __N/A__

Agent's name: __N/A__

Policy no.: __N/A__    ☐ Physical damage
Deductibles: Collision $ __N/A__    Comprehensive $ __N/A__

20. **OPTIONAL LIFE AND DISABILITY INSURANCE.** We do not require life or disability insurance. If you sign below, we will try to get the coverage(s) checked for the lease term. We will include the premium in your base monthly payment. A notice when you receive what you sign this lease describes the coverage(s). The insurance may not cover taxes and other amounts due besides the base monthly payment.

Insurer name: __N/A__

Address: __N/A__

__N/A__

☐ Life insurance (☐ Lessee  ☐ Co-Lessee  ☐ Both)    Premium $ ___

Coverage limit ___

☐ Disability insurance (Lessee only)    Premium $ ___

Monthly coverage limit $ ___

LESSEE'S SIGNATURE: X _____  Age ___

CO-LESSEE'S SIGNATURE: X _____  Age ___

21. **WARRANTY AND EXCLUSION OF WARRANTY.** You have the benefit of any warranty checked below.
☐ Standard manufacturer's warranty

h. Other (describe) _____ N/A ___ Age _____

i. Other (describe) _____ $ ___ N/A ___

**14. MILEAGE.**

Base Mileage Allowance. ☐ 15,000 miles/year. ☐ Low mileage: 12,000 miles/year.
☐ Medium-duty truck (gas/dsl): 25,000 miles/year
☐ Medium-duty truck (diesel): 35,000 miles/year

Extra Miles. You are buying ___ N/A ___ extra miles at $ ___ per mile. If this lease ends
on or after the last scheduled payment is due, we will credit you with $ ___ N/A ___ per mile for
each unused extra mile. There will be no credit if the lease ends early, you buy the
vehicle, or the vehicle is a total loss.

Total Allowed Mileage on the Odometer at Lease End is ___ 39100 ___ miles.

Starting odometer mileage _____ 100 miles

Base mileage allowance. + _____ 39000 miles

Purchased extra miles. + _____ N/A miles

Excess Mileage Charge. The excess mileage charge is $ ___ .20 ___ per mile for each mile
beyond the total allowed miles, plus tax. If the lease ends early and the vehicle is not a total
loss, any excess mileage and wear charge will not be more than residual value minus the
vehicle sale price. There is no excess mileage charge if you buy the vehicle.

VOID

CO-LESSEE'S SIGNATURE: X _____

**21. WARRANTY AND EXCLUSION OF WARRANTY.** You have the benefit of any warranty checked below.

☐ Standard manufacturer's warranty
☐ _____

Warranty papers that are separate from this lease state any coverage limits.
The law gives you a warranty that the vehicle conforms to the description in this lease.
THERE ARE NO OTHER EXPRESS WARRANTIES ON THE VEHICLE.

The following applies only if this lease is not primarily for personal, family, or household
purposes: WE MAKE NO IMPLIED WARRANTY OF MERCHANTABILITY. THERE IS NO
WARRANTY THAT THE VEHICLE IS FIT FOR A PARTICULAR PURPOSE.

**22. OPTIONAL SERVICE AND MAINTENANCE CONTRACTS.**

Name. ___ N/A ___ Term ___ months, _____ miles

Name. ___ N/A ___ Term ___ months, _____ miles

Name. ___ N/A ___ Term ___ months, _____ miles

If you are buying a service or maintenance contract now, you may pay for it at lease signing. If
you do not, the price will be in the capitalized cost and you will pay rent charges on the price.

**THERE IS NO COOLING OFF PERIOD**

California law does not provide for a "cooling off" or other cancellation period for vehicle leases. Therefore, you cannot later cancel this lease simply because you change your mind,
decided the vehicle costs too much, or wish you had acquired a different vehicle. You may cancel this lease only with the agreement of the lessor or for legal cause, such as fraud.

**THIS IS THE ENTIRE AGREEMENT.** This lease, including the front and back of this form, contains the entire agreement between you and us relating to the lease of the vehicle. Any change to
the terms of this lease must be in writing and signed by you and us. No oral changes are binding. We may delay or refrain from enforcing any of our rights under this lease without losing them.

LESSEE: X _____ BY: X _____ CO-LESSEE. X _____

(1) Do not sign this lease before you read it or if it contains any blank spaces to be filled in; (2) You are entitled to a completely filled in copy of this lease; (3) Warning - Unless a
charge is included in this lease for public liability or property damage insurance, payment for that coverage is not provided by this lease.

**YOU SIGNED AND RECEIVED A COMPLETELY**
**FILLED-IN COPY OF THIS AGREEMENT AT** FREMONT (city) CA
(state) ON _____ (month) ___ (day) _____ (year)

LESSEE: X _____ BY: X _____ CO-LESSEE: X _____

SIGNATURE AND TITLE. X _____

LESSOR: FREMONT CHEVROLET _____ TITLE (if any) _____

Lessor assigns all right, title, and interest in this lease to the party identified in this lease as the intended assignee, under the terms of the Lease Plan Dealer Agreement in effect from time to
time with the assignee (the "Dealer Agreement"). Lessor also assigns all right, title, and interest in the leased vehicle to the party identified in this lease as the intended assignee, or its designee,
under the terms of the Dealer Agreement.

LESSOR: FREMONT CHEVROLET _____ BY: X _____

SEE OTHER SIDE FOR OTHER IMPORTANT AGREEMENTS INCLUDING A PROHIBITION OF TRANSFER OF YOUR INTEREST.

671 MONTHLY CA. 1/2008    (For use in the state of California).
Copyright 2006 GMAC. All Rights Reserved. _____ QUADRUPLICATE ORIGINAL - LESSEE    Lease Agreement 9

**ADDITIONAL TERMS**

**40. ASSIGNMENT BY LESSOR.** If this lease is assigned, the assignee may designate Vehicle
Asset Universal Leasing Trust, or its trustee, as record holder to hold legal title. You may be able to transfer this lease instead of ending it early, if we approve, if you would like

## INSURANCE, USE, AND CARE OF THE VEHICLE

**23. REQUIRED VEHICLE INSURANCE.**

You must insure the vehicle through liability and physical damage policies acceptable to us. The policies must not exclude or restrict coverage if you were to drive the vehicle, or when the driver is someone you allow to drive the vehicle or who is likely to drive the vehicle. The policies must show any additional insureds and loss payees that we require. If this lease is assigned to GMAC or Central Originating Lease Trust, the initial additional insured and loss payee is "GMAC and its successors and assigns". If this lease is assigned to GMACAB, the initial additional insured and loss payee is "GMACAB and its successors and assigns". You must give us proof of insurance when we ask. We require no other insurance.

Liability insurance must (a) cover at least $50,000 for property damage, $100,000 for bodily injuries to any one person, and $300,000 for bodily injuries for any one accident, or (b) have a combined single limit of at least $500,000 for bodily injuries and property damage for any one accident.

For trucks of 10,000 lbs. GVW or more and public conveyance vehicles, liability insurance must instead (a) provide primary coverage of at least $50,000 for property damage, $100,000 for bodily injuries to any one person, and $300,000 for bodily injuries for any one accident, and umbrella coverage of at least $1,000,000 or (b) have a combined single limit of at least $1,000,000 for bodily injuries and property damage for any one accident.

Physical damage insurance must have deductibles of no more than $1,000 for collision and upset loss and $1,000 for comprehensive fire and theft loss.

If you move to a new state, we will require coverage amounts in keeping with our requirements for the new state. We now estimate that those amounts will be the same as those in this lease, but they may be higher.

**24. USE. You will not:**
— Use the vehicle illegally, improperly, or for hire.
— Use the vehicle in a way that your insurance policy prohibits.
— Remove the vehicle from the United States, except for trips to Canada of under 60 days.
— Remove the vehicle to another state for more than 30 days without telling us.
— Change the vehicle without our written consent.
— Replace parts, accessories, or tires with rented or leased items.
— Expose the vehicle to seizure, confiscation, forfeiture, or other involuntary transfer.

You will not let anyone else do any of these things.

**25. MAINTENANCE, REPAIRS, OPERATING EXPENSES, AND DAMAGE.** You will maintain and repair the vehicle to keep it in good condition. Replacement sheet metal must be new original equipment manufacturer parts. Other replacement parts must be original equipment manufacturer parts or parts of equal quality and design. (If insurance will pay for repairs, ask your insurance company to specify original equipment manufacturer sheet metal.) You will pay all maintenance, repair, and operating expenses, including gas and oil. If the odometer stops working, you must fix it immediately. You will service the vehicle as the manufacturer recommends. You will follow the manufacturer's instructions in any recall. If you don't do these things, we may do them. You will owe us our cost if we do. We may inspect the vehicle at any reasonable time and place.

When you take possession of the vehicle, you take on the risks of loss of the vehicle and of damage to it. If the vehicle is damaged, stolen, or destroyed and money becomes available from insurance, a judgment, a settlement, or the like, we will treat the money as an insurance settlement. We and/or Vehicle Asset Universal Leasing Trust will be entitled to this money. If the lease ends in connection with our receipt of the money, we will treat any money we do not use to repair the vehicle as sale proceeds.

**26. EXCESS WEAR.** Excess wear is wear that is beyond normal wear. Excess wear includes: (a) glass that is damaged, engraved, or that you tinted; (b) a damaged or corroded body, trim, frame, suspension, powertrain, engine, powertrain, or other mechanical part; (c) damaged paint; (d) a torn, damaged, or stained interior or trunkliner; (e) a pickup bed with a non-dealer installed sprayed-on bedliner; (f) sheet metal that is not original equipment sheet metal; (g) missing equipment or parts that were in or on the vehicle when delivered and not replaced with equipment or parts of equal quality and design (including a missing wheel, wheel cover, jack, or wheel wrench); (h) a tire (including spare) that is unsafe, is not the size and type the manufacturer recommends, is recapped or a snow tire, or has less than 1/8 inch of tread left at the shallowest point; (i) a damaged or worn brake that does not meet government safety standards; (j) oil leaks or the oil pressure; (k) a malfunctioning electrical system, battery, or lights; (l) any other condition that makes the vehicle run in a noisy, rough, improper, unsafe, or unlawful way; and (m) any other damage, whether or not insurance covers it.

**27. LIENS.** You will keep the vehicle free of liens unless we agree to them. If you do not remove any liens, we may do so. You will pay us any amount we pay to do so.

## WHEN THE LEASE CAN END

**28. SCHEDULED END.** This lease is scheduled to end on the date shown on the front. If this lease ends on or after the last scheduled payment is due, we will treat the lease as if it ended as scheduled and not as if it ended early. However, if the vehicle is a total loss before the scheduled lease end date, the Gap Protection section applies.

**29. LEASE END DAILY EXTENSION.** At scheduled lease end, if you keep the vehicle and do not buy it, you elect to extend the lease and pay a daily extension charge beginning on the eighth day after the scheduled lease end date. The charge is shown on the front. We may limit the number of days you extend the lease. During the daily extension period, you agree to comply with the terms of this lease, other than terms that apply to monthly payments and early end. The total allowed mileage will not increase.

**30. EARLY END.** You may end this lease anytime. We may end this lease if you are in default or if the vehicle is a total loss.

**31. DEFAULT.**

If you are in default, we may:
— End this lease and require you to pay the early end charge.
— Take the vehicle from you without demand. If the law permits, we may go on your property to take the vehicle. If the vehicle has an electronic locating device, we may use the device to find the vehicle.
— Sue you for damages and to get the vehicle back.
— Pursue any other remedy the law gives us.

We will exercise our rights without breach of the peace, at reasonable times and places, in a reasonable way, as the law permits. We may take and store any personal items that are in the vehicle. If you do not ask for these items back, we may dispose of them as the law allows. You will pay our reasonable expenses of taking these actions as the law allows. These expenses may include expenses of taking and storing the vehicle, attorney's fees, collection costs, and court costs.

— You do not pay on time.
— You made a material misrepresentation when you applied for this lease.
— You start a bankruptcy, receivership, or insolvency proceeding or one is started against you or your property.
— You break any other agreements in this lease.
— You do anything the law says is a default.

## AT LEASE END

**33. VEHICLE RETURN.** At lease end, you will return the vehicle (including any dealer installed options you do no buy outright) to any reasonable place we tell you, unless you buy the vehicle. After you return the vehicle, you will call us promptly at 1-800-200-4822 and tell us where you left the vehicle.

**34. OPTION TO BUY THE VEHICLE.** You have an option to buy the vehicle only at scheduled lease end. See the front for the price. You must also pay any related official fees and taxes.

## WHAT YOU OWE AT SCHEDULED END

**36. WHAT YOU OWE AT SCHEDULED END.**

(a) IF YOU BUY THE VEHICLE: If you have paid us and kept your agreements, you will owe us nothing more.

(b) IF YOU DO NOT BUY THE VEHICLE: If you have kept your agreements, you will owe us only any excess mileage charge, any lease end daily extension charge, and our estimated or actual cost of repairing excess wear, plus any tax. (We do not have to make repairs.)

**37. WHAT YOU OWE AT EARLY END.** In general, unless gap protection applies, you will owe us any unpaid monthly payments. We will give you a credit for any unearned rent charge and a credit if we sell the vehicle for more than residual value. We will use the actuarial method to figure the unearned rent charge. (You may ask us for a written explanation of the actuarial method.) We will treat the rent charge for each monthly period as fully earned on the period's first day. We will treat each monthly payment that you made as if we received it on its due date.

If the vehicle is a total loss, see the Gap Protection section. Otherwise, you will owe us an early end charge as follows:

The base monthly payment times the number of payments not yet due.
- Any unearned rent charge, figured by the actuarial method,
- Any surplus (see definition in this item) on the vehicle sale,
+ If there is no surplus, any Early Excess Mileage and Wear Charge (see definition in this item), plus any tax.
= The Total. If the Total is more than zero, you will owe us the Total. If the Total is less than zero, we will not give you a refund or credit.

You will also owe us any unpaid fees and taxes and any amounts due because you broke agreements in this lease. We may cancel any optional insurance or optional service, maintenance, or other contracts that we financed for you. We will give you a credit for any amount we get from cancellations.

**Definition of Surplus:** Unless you get an appraisal or gap protection applies, we will sell the vehicle at wholesale. If we sell the vehicle for more than residual value, the excess will be the surplus. If we sell the vehicle for residual value or less, the surplus will be zero.

**Appraisal.** You may get a professional appraisal of the vehicle's wholesale value. If you do so within a reasonable time, we will use the appraised value as the sale price when we figure the surplus (if any). The appraiser must be an independent third party. You and we must agree on the appraiser. You must pay for any appraisal. The appraisal will be binding.

## ADDITIONAL TERMS

**40. ASSIGNMENT BY LESSOR.** If this lease is assigned, the assignee may designate Vehicle Asset Universal Leasing Trust, or its trustee, as agent to hold title for the benefit of the assignee on the vehicle's certificate of title and/or registration.

---

If you would like to transfer this lease, please ask us about the requirements and your responsibilities.

**35. ODOMETER DISCLOSURE.** Federal law requires you to tell us the vehicle's mileage in connection with a transfer of vehicle ownership. You may be fined and/or imprisoned if you do not complete the disclosure or if you make a false statement.

**Definition of Early Excess Mileage and Wear Charge:** Our estimated or actual cost of any repairs the vehicle needs because of excess wear (we do not have to make repairs), plus any excess mileage charge. This charge will not exceed residual value minus the vehicle sale price.

**38. GAP PROTECTION.** If the vehicle is a total loss before the scheduled lease end date, and we get an insurance settlement, you have gap protection.

If the money we get from your insurance is more than or equal to (1) the base monthly payment times the number of payments not yet due, (2) minus any unearned rent charge, figured by the actuarial method, plus (3) residual value, we will give you a credit for any excess. You will owe us any unpaid fees and taxes and any amounts due because you broke agreements in this lease. We will give you a credit for any amount we get from cancellations of optional insurance, service contracts, maintenance contracts, or other contracts that we financed for you.

If the money we get from your insurance is less than (1) the base monthly payment times the number of payments not yet due, (2) minus any unearned rent charge, figured by the actuarial method, plus (3) residual value, you will owe the difference up to the amount of your insurance deductible. We will give you a credit for any amount we get from cancellations of optional insurance, service contracts, maintenance contracts, or other contracts that we financed for you. You will also owe us any unpaid fees and taxes and any amounts due because you broke agreements in this lease.

If the vehicle is a total loss and we do not get an insurance settlement, there is no gap protection. You will owe us any excess of the residual value over the vehicle's salvage value. If the lease ends before the last scheduled payment is due, you will also owe us the early end charge that applies when the vehicle is not a total loss.

**39. SECURITY DEPOSIT.** If you paid a security deposit, we will use it at lease end to pay anything you owe under this lease and do not pay. We will not pay you interest on the security deposit. We will not add to the security deposit any proceeds, money, or funds we receive from the security deposit. After lease end, we will give back any part of the security deposit that is left.

You may be able to transfer this lease instead of ending it early, if we approve. If you would like to transfer this lease, please ask us about the requirements and responsibilities.

# ADDITIONAL TERMS

**40. ASSIGNMENT BY LESSOR.** If this lease is assigned, the assignee may designate Vehicle Asset Universal Leasing Trust, or its trustee, as agent to hold title for the benefit of the assignee on the vehicle's certificate of title and/or registration.

Any sale and assignment will not be considered to change materially your duties, burden, or risk under this lease.

After assignment, GMAC will service this lease, if GMAC is the assignee or if GMAC helped to arrange this lease. You must then make all payments to GMAC (for its or the assignee's account) or as otherwise directed. If we assign this lease, you will not receive notice of assignment.

**41. PROHIBITION OF TRANSFER OF YOUR INTEREST.** YOU WILL NOT SUBLEASE OR OTHERWISE TRANSFER (EXCEPT TO YOUR ESTATE) ANY RIGHT OR INTEREST YOU HAVE UNDER THIS LEASE OR IN THE VEHICLE WITHOUT OUR PRIOR WRITTEN CONSENT.

You may be able to transfer this lease instead of ending it early, if we approve. If you would like to transfer this lease, please ask us about the requirements and responsibilities.

**42. INDEMNITY.** You will protect us from all losses, damages, injuries, claims, demands, and expenses arising out of the condition, maintenance, use, or operation of the vehicle. You agree to indemnify, and hold harmless, us and our assigns from all such losses, damages, injuries, claims, demands, and expenses.

**43. ADDRESS INFORMATION.** You waive Section 1808.21 of the California Vehicle Code and authorize us to get your residence address from the Department of Motor Vehicles.

You have the right to return the vehicle, and receive a refund of any payments made if the credit application is not approved, unless nonapproval results from an incomplete application or from incorrect information provided by you.

SEE OTHER SIDE FOR OTHER IMPORTANT AGREEMENTS.