UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WEERACHAI CHAIWONG, <br> Plaintiff, <br> v. <br> HANLEES FREMONT, INC., et al., <br> Defendants. | Case No. 16-cv-04074-HSG <br><br> **ORDER GRANTING MOTIONS TO DISMISS** <br><br> Re: Dkt. No. 21, 36 |

Pending before the Court is Defendant Ally Financial, Inc.'s ("Ally") motion to dismiss Plaintiff Weerachai Chaiwong's ("Plaintiff") first amended complaint, Dkt. No. 21, as well as Ally's motion to dismiss the cross-claims of its co-Defendant Hanlees Fremont, Inc. ("Hanlees"), Dkt. No. 36. Having carefully considered the parties' arguments and papers, the Court **GRANTS** both motions for the reasons set forth below.

## I.  BACKGROUND[1]

The following facts are undisputed unless otherwise noted. Plaintiff leased a Chevrolet Equinox from Fremont Chevrolet on June 22, 2010. Dkt. No. 19 ¶¶ 20, 22, & Ex. 3. The lease agreement listed the "Scheduled Lease End Date" as September 21, 2013. *Id.* ¶ 20, & Ex. 3 at 4.[2]

---

[1] Plaintiff seeks judicial notice of excerpts of the legislative history of California Senate Bill 1291. *See* Dkt. No. 28. The Court declines to take judicial notice of the excerpts, as the Court does not rely on them in resolving this motion. *See Molex v. City and County of San Francisco*, No. 11–cv–01282–YGR, 2012 WL 3042256, at *1 (N.D. Cal. July 25, 2012).

[2] Under the incorporation by reference doctrine, a court may consider a document extrinsic to the complaint in deciding a Rule 12(b)(6) motion if the document's "authenticity is not contested and the plaintiff's complaint necessarily relies on" it. *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2001) (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998)); *see also United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (document may be incorporated by reference "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim"). When a document is incorporated by reference, "the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Ritchie*, 342 F.3d at 908. The Court thus deems Exhibits 1-4 to the First Amended Complaint incorporated by reference.

However, the lease also stated that "[i]f this lease ends on or after the last scheduled payment is due, we will treat the lease as if it ended as scheduled and not as if it ended early" (the "Treat As" clause). *Id.*, Ex. 3 at 4. The lease also stated that at lease end Plaintiff would owe "any excess mileage charge, any lease end daily extension charge, and [Ally's] estimated or actual cost of repairing excess wear, plus any tax," but that Plaintiff was free to terminate the lease "anytime" prior to its scheduled end date, though early termination fees would then apply. *Id.*, Ex. 3 at 4.

Prior to Plaintiff's termination of the lease, Ally accepted assignment of the contract. *Id.* ¶ 22. On September 19, 2013, Plaintiff attempted to "trade" the vehicle in to Defendant Hanlees, a third party dealership, in connection with the lease of a Hyundai Santa Fe, rather than returning the vehicle to Ally directly. *Id.* ¶ 24. Plaintiff claims that Hanlees "represented to Plaintiff that it was authorized to accept the [Equinox] as a trade-in vehicle." *Id.* ¶ 27. Plaintiff also claims that as a result of his alleged "trade-in" of the vehicle, Hanlees became responsible for paying Ally the $17,543.50 balance owed on the lease but only issued a check to Ally in the amount of $15,736.00. *Id.* ¶ 32.

While Hanlees initially indicated that it wished to purchase the Equinox, Ally mistakenly repossessed the vehicle in October 2013 causing Hanlees to change its mind, and Ally issued Hanlees a refund of the $15,736.00 check. Dkt. No. 25 ¶¶ 65, 66; Dkt. No. 19, Ex. 2. Because Plaintiff relinquished the Equinox two days prior to the "Scheduled Lease End Date" listed in the contract, Plaintiff believed he was terminating his lease with Ally early. Dkt. No. 19 ¶ 26. However, because Plaintiff had already made the final payment on the lease, Ally treated the lease as if it had ended as scheduled, and charged Plaintiff $9,712.76 for excess wear and mileage and related sales/use taxes. *Id.* ¶ 37; Dkt. No. 21 at 3.

Within a few months of "trading" the vehicle in, "Plaintiff began receiving calls from Ally "stating that he was delinquent on payments for the lease of the Chevrolet." Dkt. No. 19 ¶ 33. Plaintiff "notified [] Ally that he had traded in the Chevrolet to [] Hanlees." *Id.* In addition, Plaintiff "immediately" notified Hanlees of the issue and "requested that [] Hanlees fulfill its contractual obligation to pay off any remaining lease balance on the Chevrolet" to Ally. *Id.*

Plaintiff filed suit against Ally and Hanlees in the Superior Court of California on May 25,

2016. Dkt. No. 1, Ex. 1. On July 20, 2016, the action was removed to this Court under the Class Action Fairness Act. *Id.* at 1. Plaintiff filed a First Amended Individual and Class Action Complaint on September 1, 2016 ("FAC"). Dkt. No. 19. The FAC alleges three claims against Ally, including (1) violation of the Unfair Competition Law ("UCL") Business and Professions Code § 17200 by committing unfair and unlawful acts, *id.* ¶¶ 80-90; (2) violation of the Rosenthal Fair Debt Collection Practices Act ("FDCPA"), *id.* ¶¶ 91-108; and (3) declaratory relief, *id.* ¶¶ 109-115. The FAC also asserts claims against Hanlees arising out of Hanlees' alleged misrepresentation to Plaintiff that it would pay off the balance of the Equinox after Plaintiff traded the vehicle in for the Hyundai. *Id.* ¶¶ 54-79.

In addition, in its answer to the FAC, Hanlees asserted several cross-claims against Ally, including (1) violation of the UCL Business and Professions Code § 17200 by committing unlawful, unfair, and deceptive acts; (2) equitable indemnity; (3) intentional interference with prospective economic advantage; and (4) slander and disparagement of title. Dkt. No. 25. Ally now moves to dismiss both Plaintiff's and Hanlees' claims. *See* Dkt. Nos. 21, 36.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless,

3

Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Federal Rule of Civil Procedure 9(b) heightens these pleading requirements for all claims that "sound in fraud" or are "grounded in fraud." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citation omitted); Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). "[The Ninth Circuit] has interpreted Rule 9(b) to require that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (quotation marks and citation omitted).

## III. ANALYSIS

### A. Ally's Motion to Dismiss the FAC

Each of Plaintiff's claims against Ally rests on the same flawed contention: that Plaintiff terminated his lease with Ally early when he "traded" his Equinox in for a Hyundai two days prior to the scheduled lease end date. As an initial matter, the Court notes that Plaintiff's argument is counterintuitive—were Ally to treat the lease as though it had been terminated early, Plaintiff would be liable for $17,534.50 in early termination fees rather than the $9,187.76 Ally charged him in excess wear and mileage fees. Dkt. No. 19 ¶¶ 30, 40. Nevertheless, Plaintiff requests that the Court find that he terminated the lease early, presumably so that Plaintiff may pass off the early termination fees to Hanlees, while at the same time avoiding liability for the excess wear and mileage fees he incurred prior to termination. Not only would such a finding be untenable, but it would directly contradict the express terms of the lease agreement, which provide that surrender of the Equinox after the date of Plaintiff's final payment would be treated "as if [the lease had] ended as scheduled and not as if it ended early." *Id.*, Ex. 3 at 4.

While both Plaintiff and Hanlees contend that the Treat As clause is unfair and unlawful, the Court disagrees. To state a claim based on unlawful business practices under the UCL, a plaintiff must allege that a defendant violated an underlying law. *Finuliar v. BAC Home Loans*

4

*Serv. Corp, LLP*, No. C–11–02629 JCS, 2011 WL 4405659, at *9 (N.D. Cal. Sept. 21, 2011). Plaintiff here alleges that Ally violated the Vehicle Leasing Act ("VLA") §§ 2987(a) and (f)(2), and the FDCPA. Dkt. No. 19 ¶ 84. Section 2987(a) specifies that "[a] lessee has the right to terminate a lease contract at any time prior to the scheduled expiration date *specified in the lease contract*," while § 2987(f)(2) applies only "if, prior to the scheduled expiration date specified in the lease contract, the lessee terminates the lease and purchases the vehicle or trades in the vehicle in connection with the purchase or lease of another vehicle." Veh. License Act Sections 2987(a), (f) (emphasis added). The parties offer differing interpretations of the phrase "scheduled expiration date specified in the lease contract." While Plaintiff contends that the "Scheduled Lease End Date" of September 21, 2013 is the sole scheduled expiration date, Dkt. No. 27 at 5-7, Ally contends that the Treat As clause in the lease provides alternative scheduled end dates: *either* September 21, 2013, *or* any date before September 21, 2013 but after final payment, Dkt. No. 21 at 8. The Court agrees with Ally. Because nothing in the VLA prevents a lessor from specifying multiple potential scheduled end dates, the Court finds that the Treat As clause in the lease established alternative scheduled end dates, such that Plaintiff's September 19, 2013 return of the vehicle did not constitute an early termination. Sections 2987(a) and (f)(2) therefore do not apply. Plaintiff thus has not plausibly alleged that Ally's conduct was unlawful.

However, even if §§ 2987(a) and (f)(2) did apply, the lease agreement did not violate those terms. Nothing in the lease agreement—including the Treat As clause—prevented Plaintiff from purchasing or returning the Equinox at any time during the rental period. Instead, the Treat As clause merely protected Plaintiff from being charged early termination fees in the event he wished to return the vehicle between the date he made his final payment on the Equinox and September 21, 2013. That Plaintiff now wishes to sidestep a provision that seeks to prevent lessees from being forced to pay substantial early termination fees illustrates the irrationality of Plaintiff's claims.

Plaintiff's FDCPA claim also fails. Specifically, Plaintiff contends that Defendant violated the FDCPA by making "false representations to Plaintiff of the character, amount, or legal status of the alleged debt of $9,187.76," making false representations to the Law Offices of Patenaude &

5

Felix of the character, amount, or legal status of the alleged debt," and "[a]ttempt[ing] to collect the alleged debt . . . owed by Plaintiff that was not permitted by the California VLA." FAC ¶ 101. As Ally states, "[t]he gravamen of Plaintiff's Rosenthal Act claim is that Ally's charging of and collection of the excess wear and mileage fees were improper because the charges themselves were improper" due to Plaintiff having allegedly terminated the lease early. Dkt. No. 21 at 6. However, in light of the Court's finding that Plaintiff has not adequately alleged that he terminated the lease early, Plaintiff's claim that Ally improperly charged and attempted to collect those fees fails.

Furthermore, while California Courts are currently split as to the definition of "unfair" under the UCL, because Defendant was complying with the express terms of the contract when it treated Plaintiff's return of the vehicle as a scheduled termination, Plaintiff has alleged no facts that could establish that Ally's conduct was unfair.[3] *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169-1170 (9th Cir. 2012) (holding that while "the proper definition of 'unfair' conduct against consumers 'is currently in flux' among California courts," Plaintiff's "fail[ure]to read the terms and conditions before agreeing to them, and . . . [his] refus[al] to cancel his card within 90 days" begged the conclusion that "any harm he suffered was the product of his own behavior, not the advertisements" at issue.).

Finally, and for the same reasons discussed above, the Court declines to consider Plaintiff's declaratory relief claim, which requests that the Court use its discretion to declare, among other things, that he terminated the lease early, and is not liable for the excess wear and mileage owed under the lease. Dkt. No. 19 ¶ 114(b), (g), (h); *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 533 (9th Cir. 2008) (citations omitted) ("Federal courts do not have a duty

---

[3] California Courts have contemplated three tests to determine whether a practice was "unfair" in consumer-filed UCL actions. A practice is considered unfair when (1) "the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided," *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 839 (2006); (2) the practice "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," *Smith v. State Farm Mutual Auto. Ins. Co.*, 93 Cal. App. 4th 700, 719 (2001) (citations omitted); or (3) "the public policy which is a predicate to the action [is] tethered to specific constitutional, statutory or regulatory provisions," *Scripps Clinic v. Superior Court*, 108 Cal. App. 4th 917, 940 (2003) (internal quotation marks omitted).

6

to grant declaratory judgment; therefore, it is within a district court's discretion to dismiss an action for declaratory judgment."). The Court thus **GRANTS** Ally's first motion in full.

### B. Ally's Motion to Dismiss Hanlees' Cross-Claims

Each of Hanlees' cross-claims against Ally also fails. First, Hanlees asserts a UCL claim against Ally for unlawful, unfair, and fraudulent business practices based on Ally's alleged violation of §§ 2987(a) and (f) of the VLA. Dkt. No. 25 ¶¶ 88-92. Ally contends that Hanlees lacks standing to bring such a claim, arguing that Hanlees failed to identify any injury in fact. Dkt. No. 36 at 7-9. However, the Court need not reach that issue since, even assuming that Hanlees does have standing to assert these claims, which the Court does not now decide, Hanlees fails to plead facts sufficient to establish that Ally's conduct was unlawful for the same reasons discussed above.

Nor was Ally's conduct unfair as alleged. To demonstrate unfairness as a competitor, Hanlees would have to allege facts that show that Ally's conduct "threaten[ed] an incipient violation of an antitrust law, or . . . violate[d] the policy or spirit of one of those laws because its effects [were] comparable to a violation of the law, or [] otherwise significantly threaten[ed] or harm[ed] competition." *Cel-Tech Commn'cs, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180, 183 (1999). Hanlees argues that "Ally's practices as alleged in the cross-claim were 'unfair,' in that they burdened both Hanlees [] and plaintiff with burdens and costs the only purpose of which was to limit competition and drive trade-ins to Ally and away from Hanlees []." Dkt. No. 46 at 10. The Court disagrees. Since Ally was well within its right to collect the excess wear and mileage fees based on the express terms of the contract, Hanlees fails to allege facts sufficient to establish that Ally's attempt to collect fees that were owed to it either violated an antitrust law, violated the spirit of any such law, or "otherwise significantly threaten[ed] or harm[ed] competition." *Cel-Tech Commn'cs*, 20 Cal. 4th at 183.

Finally, in order to establish that Ally's acts were fraudulent under the UCL, Hanlees must plead facts that establish that Ally's conduct was likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992). Hanlees contends that Ally's acts served to "[s]ystematically misrepresent[] to potential customers of Hanlees that they cannot trade

7

in their vehicles leased from Ally without mileage and condition penalties, in violation of the VLA." Dkt. No. 25 ¶ 89(a); *see also* Dkt. No. 46 at 11. However, because Plaintiff has not adequately alleged that he terminated the lease early and the lease agreement explicitly states that Ally's customers may be charged for excess wear or mileage at lease end, this claim also fails. *See Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1178 (2002) (affirming finding that Plaintiffs were not "likely to be deceived" under the UCL where "deed of trust contained language sufficient to notify the [plaintiffs] that such fees could be imposed on them").

Hanlees next asserts claims for equitable indemnity and indemnification under the UCL, contending that because Plaintiff's claims "in the [FAC] arise from a series of related transactions in which both Hanlees and Ally are alleged to have been involved, . . . to the extent that Hanlees and Ally may be found to be jointly and severally liable . . . Ally should be determined to be entirely responsible and liable for all damages that plaintiff may be found to have suffered." Dkt. No. 25 ¶¶ 95, 96; *see also id.* ¶ 87. "Although the body of law defining and applying principles of equitable indemnity has not fully gelled but is still evolving, one thing is clear: The doctrine applies only among defendants who are jointly and severally liable to the plaintiff." *BFGC Architects Planners, Inc. v. Forcum/Mackey Constr., Inc.*, 119 Cal. App. 4th 848, 852 (2004). "[J]oint and several liability in the context of equitable indemnity is fairly expansive. We agree it is not limited to 'the old common term joint tortfeasor. . . .' It can apply to acts that are concurrent or successive, joint or several, as long as they create a detriment caused by several actors." *Id.* (quotation marks omitted). In addition, and "[w]ith limited exception, there must be some basis for tort liability against the proposed indemnitor . . . [which is generally] based on a duty owed to the underlying plaintiff." *Id.* While the parties dispute whether they are jointly and severally liable for Plaintiff's alleged injury, Hanlees' claims nevertheless fail because Hanlees does not allege facts sufficient to establish that Ally violated a duty to Plaintiff when it followed the express terms of the lease agreement in treating Plaintiff's September 19, 2013 "trade-in" of the Equinox as a scheduled termination.

Finally, Hanlees asserts a claim for slander and disparagement of title. Dkt. No. 25 ¶¶ 105-111. Slander of title is a "tortious injury to property resulting from unprivileged, false, malicious

8

1  publication of disparaging statements regarding the title to property owned by plaintiff, to
2  plaintiff's damage," and requires the pleading of facts establishing: "(1) a publication; (2) which is
3  without privilege or justification; (3) which is false; and (4) which causes direct and immediate
4  pecuniary harm." *Manhattan Loft, LLC v. Mercury Liquors, Inc.*, 173 Cal. App. 4th 1040, 1051
5  (2009). Hanlees contends that "Ally published false statements concerning Hanlees' legal and
6  equitable title to the Chevrolet" and "has a pattern and practice of publishing false statements
7  concerning Hanlees' legal and equitable title to vehicles that it acquires by sale or trade from
8  lessees and former lessees of Ally." Dkt. No. 25 ¶¶ 106, 107. However, Hanlees fails to specify
9  the allegedly slanderous statements, how or when they were published, how they were false, or
10 what type of pecuniary loss it might suffer as a result. *See id.* ¶¶ 105-111. Such bare assertions
11 are thus too conclusory to withstand a motion to dismiss. *See In re Gilead Scis. Secs. Litig.*, 536
12 F.3d at 1055.[4]

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** both of Ally's motions to dismiss. As a general rule, leave to amend a complaint that has been dismissed should be freely granted. Fed. R. Civ. Proc. 15(a). However, leave to amend may be denied when the Court "determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). Given the Court's interpretation of the lease agreement, the Court is skeptical that Plaintiff or Hanlees will be able to plead new facts that would change the above analysis. Nevertheless, because the Court cannot conclusively say at this point that the pleadings

---

[4] Ally also moves to dismiss Hanlees' claim for intentional interference with prospective economic advantage as time-barred, which Hanlees does not address in its opposition. *See* Dkt. Nos. 36 at 14-17, 46. Accordingly, the Court finds that Hanlees has abandoned that claim. *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1031 (N.D. Cal. 2012) (deeming Plaintiff's claim "abandoned" when "Plaintiffs' opposition failed to address their claim for unjust enrichment"); *In re TFT–LCD Antitrust Litig.,* 586 F. Supp. 2d 1109, 1131 (N.D. Cal. 2008). However, even if the claim were not abandoned, Hanlees could not save it, as the statute of limitations for intentional interference claims is two years and Hanlees waited until May 25, 2016 to file claims arising out of a 2013 alleged violation. Cal. Code Civ. Proc. Section 339; Dkt. No. 1, Ex. 1; *Ledesma v. Jack Stewart Produce, Inc.*, 816 F.2d 482, 484 n.1 (9th Cir. 1987) (holding that a statute of limitations defense may be raised by a motion to dismiss "[if] the running of the statute is apparent on the face of the complaint.").

"could not possibly be cured," *id.*, Plaintiff and Hanlees are granted an opportunity to amend the complaint and cross-complaint by September 30, 2017.

**IT IS SO ORDERED.**

Dated: 9/1/2017

HAYWOOD S. GILLIAM, JR.
United States District Judge