UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WEERACHAI CHAIWONG,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>HANLEES FREMONT, INC., et al.,<br><br>　　　　　Defendants. | Case No. 16-cv-04074-HSG<br><br>**ORDER GRANTING MOTIONS TO DISMISS AND SETTING CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. Nos. 60, 66 |

Pending before the Court is Defendant Ally Financial, Inc.'s ("Ally") motion to dismiss Plaintiff Weerachai Chaiwong's ("Plaintiff") second amended complaint ("SAC"), Dkt. No. 60, as well as Ally's motion to dismiss the cross-claims of its co-Defendant Hanlees Fremont, Inc. ("Hanlees"), Dkt. No. 66. Having carefully considered the parties' papers, the Court **GRANTS** both motions for the reasons set forth below.[1]

**I. BACKGROUND**

The Court dismissed Plaintiff's first amended complaint and Hanlees' cross-claims on September 1, 2017. *See* Dkt. No. 55. The Court granted leave to amend, despite being "skeptical that Plaintiff or Hanlees" would be able to plead additional facts sufficient to survive a second motion to dismiss. *Id.* at 9:19. The Court's skepticism was warranted, as Plaintiff and Hanlees have pled essentially the same facts and still fail to state a claim upon which relief can be granted.

**A. Factual Background**

For purposes of this motion to dismiss, the Court accepts the following facts as true. Plaintiff leased a Chevrolet Equinox from Fremont Chevrolet on June 22, 2010. SAC, Dkt. No. 57, ¶¶ 29–32. The lease agreement listed the "Scheduled Lease End Date" as September 21, 2013.

---

[1] The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b).

*Id.* ¶ 34 & Ex. 3 at 4.[2] However, the lease also stated that "[i]f this lease ends on or after the last scheduled payment is due, we will treat the lease as if it ended as scheduled and not as if it ended early" (the "Treat As" clause). *Id.* Ex. 3 at 4. The lease also stated that at lease end Plaintiff would owe "any excess mileage charge, any lease end daily extension charge, and [Ally's] estimated or actual cost of repairing excess wear, plus any tax," but that Plaintiff was free to terminate the lease "anytime" prior to its scheduled end date, though early termination fees would then apply. *Id.*

Prior to Plaintiff's termination of the lease, Ally accepted assignment of the contract. *Id.* ¶ 32. On September 19, 2013, Plaintiff attempted to "trade" the vehicle in to Defendant Hanlees, a third-party dealership, in connection with the lease of a Hyundai Santa Fe, rather than returning the vehicle to Ally directly. *Id.* ¶ 36. Plaintiff claims that Hanlees "represented to Plaintiff that it was authorized to accept the [Equinox] as a trade-in vehicle." *Id.* ¶ 39. Plaintiff also claims that as a result of his alleged "trade-in" of the vehicle, Hanlees became responsible for paying Ally the $17,543.50 to buy out the lease, but Hanlees only issued a check to Ally in the amount of $15,736.00. *Id.* ¶ 44.

While Hanlees initially indicated that it wished to purchase the Equinox, Ally mistakenly repossessed the vehicle in October 2013, causing Hanlees to change its mind, and Ally issued Hanlees a refund of the $15,736.00 check. Dkt. No. 61 ¶¶ 76–81; SAC Ex. 2. Because Plaintiff relinquished the Equinox two days prior to the "Scheduled Lease End Date" listed in the contract, Plaintiff believed he was terminating his lease with Ally early. SAC ¶ 36. However, because Plaintiff had already made the final payment on the lease, Ally treated the lease as if it had ended as scheduled, and charged Plaintiff $9,712.76 for excess wear and mileage and related sales/use

---

[2] Under the incorporation by reference doctrine, a court may consider a document extrinsic to the complaint in deciding a Rule 12(b)(6) motion if the document's "authenticity is not contested and the plaintiff's complaint necessarily relies on" it. *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2001) (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998)); *see also United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (document may be incorporated by reference "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim"). When a document is incorporated by reference, "the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Ritchie*, 342 F.3d at 908. The Court thus deems Exhibits 1–4 to the SAC to be incorporated by reference.

taxes. *Id.* ¶ 49.

Within a few months of "trading" the vehicle in, "Plaintiff began receiving calls from Defendant Ally stating that he was delinquent on payments for the lease of the Chevrolet." SAC ¶ 45. Plaintiff "notified [] Ally that he had traded in the Chevrolet to [] Hanlees." *Id.* In addition, Plaintiff "immediately" notified Hanlees of the issue and "requested that [] Hanlees fulfill its contractual obligation to pay off any remaining lease balance on the Chevrolet" to Ally. *Id.*

### A. Procedural History

Plaintiff filed suit against Ally and Hanlees in the Superior Court of California on May 25, 2016. Dkt. No. 1 Ex. 1. On July 20, 2016, the action was removed to this Court under the Class Action Fairness Act. *Id.* at 1. Plaintiff filed a first amended individual and class action complaint on September 1, 2016 ("FAC"). Dkt. No. 19. Hanlees answered the FAC and asserted several cross-claims against Ally. *See* Dkt. No. 25. Ally moved to dismiss both Plaintiff's and Hanlees' claims. *See* Dkt. No. 21, 36. The Court granted Ally's motions on September 1, 2017, but gave Plaintiff and Hanlees leave to amend. Dkt. No. 55.

Plaintiff filed its second amended individual and class action complaint on September 29, 2017. *See* SAC, Dkt. No. 57. The SAC alleges three claims against Ally, including (1) violation of the Unfair Competition Law ("UCL") Business and Professions Code § 17200 by committing unfair and unlawful acts, *id.* ¶¶ 92–102; (2) violation of the Rosenthal Fair Debt Collection Practices Act ("FDCPA"), *id.* ¶¶ 103–20; and (3) declaratory relief, *id.* ¶¶ 121–27. The SAC also asserts claims against Hanlees arising out of Hanlees' alleged misrepresentation to Plaintiff that it would pay off the balance of the Equinox after Plaintiff traded the vehicle in for the Hyundai. *Id.* ¶¶ 66–91.

In its answer to the SAC, Hanlees asserted several cross-claims against Ally, including (1) violation of the UCL Business and Professions Code § 17200 by committing unlawful, unfair, and deceptive acts, Dkt. No. 61 ¶¶ 95–114; (2) equitable indemnity, *id.* ¶¶ 115–18; and (3) intentional interference with prospective economic advantage, *id.* ¶¶ 119–26.

Ally filed a motion to dismiss Plaintiff's claims, Dkt. No. 60, and a motion to strike or dismiss Hanlees' claims, Dkt. No. 66. Plaintiff responded in opposition, Dkt. No. 63, and Ally

3

replied, Dkt. No. 65. Hanlees responded in opposition, Dkt. No. 69, and Ally replied, Dkt. No. 70.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Federal Rule of Civil Procedure 9(b) heightens these pleading requirements for all claims that "sound in fraud" or are "grounded in fraud." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citation omitted); Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). "[The Ninth Circuit] has interpreted Rule 9(b) to require that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (quotation marks and citation omitted).

1  **III.  ANALYSIS**

2     **B.    Ally's Motion to Dismiss the SAC**

3   The Court was skeptical that Plaintiff could plead new facts in its second amended complaint that would change the Court's analysis—and that skepticism was borne out. Plaintiff's second amended complaint contains nearly identical factual allegations to the prior dismissed complaint, with the only notable additions being a longer explanation of the mechanics of car leases and added legal conclusions. *See* SAC ¶¶ 9–28.

Just as before, each of Plaintiff's claims against Ally rests on the same flawed contention: that Plaintiff terminated his lease with Ally early when he "traded" his Equinox in for a Hyundai two days prior to the scheduled lease end date. Despite Plaintiff's protestations that "the VLA excludes multiple or alternative lease end dates," Dkt. No. 63 at 8, such an interpretation is flatly belied by the Code itself. *See* Cal. Civ. Code § 14(a) ("the singular number includes the plural, and the plural the singular"). This Court reaffirms its finding that the Treat As clause in the lease established alternative scheduled end dates, such that Plaintiff's September 19, 2013 return of the vehicle did not constitute an early termination. Because Plaintiff ended the Equinox lease on time, rather than early, Sections 2987(a) and (f)(2) of the Vehicle Leasing Act ("VLA") do not apply.

Plaintiff claims that Ally's actions were unlawful or unfair under the UCL. To state a claim based on unlawful business practices under the UCL, a plaintiff must allege that a defendant violated an underlying law. *Finuliar v. BAC Home Loans Serv. Corp, LLP*, No. C–11–02629 JCS, 2011 WL 4405659, at *9 (N.D. Cal. Sept. 21, 2011). But Ally cannot have violated the VLA as alleged, because the sections of the VLA Plaintiff relies upon apply only to leases that were terminated early.

Nor has Plaintiff adequately alleged that Ally's actions were unfair. Although California courts are split as to the definition of "unfair" under the UCL, because Ally was complying with the express terms of the contract when it treated Plaintiff's return of the vehicle as a scheduled termination, Plaintiff has alleged no facts that could establish that Ally's conduct was unfair.[3] *See*

---

[3] California Courts have contemplated three tests to determine whether a practice was "unfair" in consumer-filed UCL actions. A practice is considered unfair when (1) "the consumer injury is

5

*Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169–1170 (9th Cir. 2012) (holding that while "the proper definition of 'unfair' conduct against consumers is currently in flux among California courts," the consumer's "fail[ure]to read the terms and conditions before agreeing to them" begged the conclusion that "any harm he suffered was the product of his own behavior, not the advertisements" at issue) (internal quotation omitted).

Just as before, Plaintiff contends that Ally violated the FDCPA by making "false representations to Plaintiff of the character, amount, or legal status of the alleged debt of $9,187.76," making "false representations to the Law Offices of Patenaude & Felix of the character, amount, or legal status of the alleged debt," and "[a]ttempt[ing] to collect the alleged debt . . . owed by Plaintiff that was not permitted by the California VLA." SAC ¶ 114. Because the Court has already found that Plaintiff terminated the lease on time, his claim that Ally improperly charged and attempted to collect the fees owed to it for excess wear and mileage fails as a matter of law.

Finally, and for the same reasons discussed above, the Court declines to consider Plaintiff's declaratory relief claim, which requests that the Court use its discretion to declare, among other things, that he terminated the lease early, and is not liable for the excess wear and mileage owed under the lease. SAC ¶ 126; *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 533 (9th Cir. 2008) (citations omitted) ("Federal courts do not have a duty to grant declaratory judgment; therefore, it is within a district court's discretion to dismiss an action for declaratory judgment.").

The Court **GRANTS** Ally's first motion to dismiss in full, without leave to amend.

**A.    Ally's Motion to Dismiss Hanlees' Cross-Claims**

To begin, Hanlees' cross-claims against Ally are untimely. The Court set a deadline of

---

substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided," *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 839 (2006); (2) the practice "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," *Smith v. State Farm Mutual Auto. Ins. Co.*, 93 Cal. App. 4th 700, 719 (2001) (citations omitted); or (3) "the public policy which is a predicate to the action [is] tethered to specific constitutional, statutory or regulatory provisions," *Scripps Clinic v. Superior Court*, 108 Cal. App. 4th 917, 940 (2003) (internal quotation marks omitted).

September 30 to amend the cross-complaint, *see* Dkt. No. 55, but Hanlees did not file until October 27, *see* Dkt. No. 61. Hanlees has provided no valid reason for this delay. This Court could exercise its discretion to dismiss Hanlees' cross-claims for failure to comply with the deadline. *See* Fed. R. Civ. P. 41(b); *Yourish v. California Amplifier*, 191 F.3d 983, 986 (9th Cir. 1999). However, the late filing is of little consequence, because Hanlees fails to state a claim upon which relief can be granted.

First, Hanlees claims that Ally violated UCL Business and Professions Code § 17200 by committing unlawful, unfair, and deceptive acts, Dkt. No. 61 ¶¶ 95–114. Once again, the Court need not reach the issue of Hanlees' standing to bring a UCL claim, because even assuming that Hanlees has standing, it fails to plead facts sufficient to establish a UCL violation. Hanlees alleges that Ally violated "California laws limiting prohibitions on assignment" because it refused to "honor Plaintiff's right to trade in the" Equinox or to "accept[] Hanlees' full payoff" of the Equinox. *Id.* ¶¶ 98–99, 107. But Hanlees' legal theory is irreconcilable with its allegations that it "paid Ally the entire agreed balance," *id.* ¶ 71, "Ally accepted and cashed the Payoff Check in full satisfaction," *id.* ¶ 74, and "Ally acknowledged to Hanlees that Ally had no right to possession of the [Equinox] at the time of the [repossession]," *id.* ¶ 81. In other words, Hanlees attempts to allege both that Ally illegally prohibited assignment to Hanlees and that Ally acknowledged the validity of the assignment to Hanlees. *See also* SAC Ex. 2.

Nor was Ally's conduct unfair as alleged. To demonstrate unfairness as a competitor in its amended cross-claim, Hanlees would have needed to allege facts that show that Ally's conduct "threaten[ed] an incipient violation of an antitrust law, or . . . violate[d] the policy or spirit of one of those laws because its effects [were] comparable to a violation of the law, or [] otherwise significantly threaten[ed] or harm[ed] competition." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180, 183 (1999). Hanlees alleges that Ally has imposed "mileage and condition penalties" and made "unlawful overage claims" that have damaged Hanlees' business and reputation. Dkt. No. 61 ¶ 106. But Ally was well within its right to collect the excess wear and mileage fees based on the express terms of the contract. Hanlees fails to allege facts sufficient to establish that Ally's attempt to collect fees that were owed to it either

7

violated an antitrust law, violated the spirit of any such law, or "otherwise significantly threaten[ed] or harm[ed] competition." *Cel-Tech Commc'ns*, 20 Cal. 4th at 183.

Finally, in order to establish that Ally's acts were fraudulent under the UCL, Hanlees must plead facts that establish that Ally's conduct was likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992). Once again, Hanlees contends that Ally's acts served to "[s]ystematically misrepresent[] to potential customers of Hanlees that they cannot trade in their vehicles leased from Ally without mileage and condition penalties." Dkt. No. 61 ¶ 106. However, because Plaintiff has not adequately alleged that he terminated the lease early and the lease agreement explicitly states that Ally's customers may be charged for excess wear or mileage at lease end, this claim also fails. *See Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1178 (2002) (affirming finding that Plaintiffs were not "likely to be deceived" under the UCL where "deed of trust contained language sufficient to notify the [plaintiffs] that such fees could be imposed on them").

Just as in its original cross-complaint, Hanlees asserts claims for equitable indemnity and indemnification under the UCL, contending that because Plaintiff's claims "in the [SAC] arise from a series of related transactions in which both Hanlees and Ally are alleged to have been involved, . . . to the extent that Hanlees and Ally may be found to be jointly and severally liable . . . Ally should be determined to be entirely responsible and liable for all damages that Plaintiff may be found to have suffered." Dkt. No. 61 ¶¶ 115–18. Hanlees' claims for indemnification fail because Hanlees does not allege facts sufficient to establish that Ally violated a duty to Plaintiff when it followed the express terms of the lease agreement in treating Plaintiff's September 19, 2013 "trade-in" of the Equinox as a scheduled termination.

Finally, Hanlees brings the exact same claim of intentional interference with prospective economic advantage as it did in its first cross-complaint. Dkt. No. 61 ¶¶ 119–26. Just as before, that claim is time-barred. The statute of limitations for intentional interference claims is two years, but Hanlees waited until May 25, 2016 to file claims arising out of a 2013 alleged violation. Cal. Code Civ. Proc. § 339; Dkt. No. 1, Ex. 1; *Ledesma v. Jack Stewart Produce, Inc.*, 816 F.2d 482, 484 n.1 (9th Cir. 1987) (holding that a statute of limitations defense may be raised by

8

a motion to dismiss if "the running of the statute is apparent on the face of the complaint").

The Court **GRANTS** Ally's second motion to dismiss in full, without leave to amend.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** both of Ally's motions to dismiss, without leave to amend.

The Court **SETS** a case management conference for October 24, 2018 at 2:00 p.m. Plaintiff and Hanlees shall meet and confer and file a joint case management statement, in compliance with Civil Local Rule 16-9(a), by October 17. In the statement, the parties must include a proposed case schedule for the prompt resolution of what remains of this action.

**IT IS SO ORDERED.**

Dated: 9/27/2018

HAYWOOD S. GILLIAM, JR.
United States District Judge